## LOUCKS v. THE UNION BANK OF LOUISIANA.

Where a sheriff's deed for property sold at a judicial sale, after enumerating several special mortgages, recites that the property was sold "subject to the mortgages specified," the recital will add nothing to the consequences which the law attaches to the adjudication made by the sheriff, nor to the obligations of the purchaser. *Per Curiam:* A sale under execution may be made for a sum fixed, and for the additional amount of previous mortgages; but, unless such appear distinctly to be the terms upon which the property was offered, the purchaser will not be presumed to have given more than the sum bid by him.

The fact that the sum for which property was adjudicated at a judicial sale, is less than the amount of previous special mortgages, will not prevent a sale, where the previous mortgages are in favor of the judgment creditor. C. P. 683, 684. Where the owner of such previous encumbrances appears at the sale and assents to the adjudication, no other party can complain of the insufficiency of the price.

The consent of a mortgagee to give a preference over his mortgage to one executed in favor of a third person, does not amount to a cancelling of the mortgage of the former. It is a mere agreement that such third person, for the amount of his mortgage, shall take the place of the mortgagee who consents to the postponement.

APPEAL from the District Court of East Baton Rouge, *Burk*, J. *Elam*, for the appellants. *A. Denis*, for the defendants. The opinion of the court was pronounced by

KING, J.* In 1816, *Francis D. Newcomb* was confirmed in the tutorship of his minor children, the issue of his first marriage, of whom the plaintiff, *Mary W. Newcomb*, was one. The estate of the minors, of which he acquired the administration in virtue of the tutorship, was ascertained and fixed by a decree of the Probate Court. Previous to his confirmation he purchased at the probate sale of *Guy Duplantier's* succession, a plantation, with two hundred and twenty-five shares of the capital stock of the Union Bank of Louisiana, secured by a mortgage on the property purchased. The plantation and stock were subject to a further mortgage in favor of the bank to secure the sum of $10,125, the residue of a stock loan made to *Duplantier*. The adjudication to *Newcomb* was for the price of $14,950; and, by the terms of the sale he assumed these mortgages, and the payment of the stock loan. For the residue of the price, $4,825, a mortgage was retained in favor of the succession. In 1839, *Newcomb* obtained a loan from the Union Bank, and, to secure its repayment, mortgaged this plantation, and pledged the two hundred and twenty-five shares of stock. The widow of *Guy Duplantier* intervened in the act, as administratrix of her husband's succession, and tutrix of her minor children, and postponed the mortgage retained in favor of the estate, giving precedence and priority over it to that granted by *Newcomb* to the bank, to secure the loan on that day made to him. In 1846, the Union Bank obtained an order for the seizure and sale of the plantation and two hundred and twenty-five shares of stock, under the mortgage granted in 1839, to secure the loan made to *Newcomb*, in virtue of which the property seized was adjudicated to the bank, at the second exposure, for $7,670, and two twelve-months' bonds, amounting collectively to that sum, were given by the purchaser. In the sheriff's deed the special mortgages with which the property was encumbered are recited, in the order of

---

\* EUSTIS, C. J., being interested, did not sit in this case.

their dates. The two first were to secure the stock. These, it is conceded on both sides, may be left out of view, the stock being at a premium. The third was a mortgage in favor of the Union Bank to secure the payment of $7,825, to which sum the stock loan had been reduced; and the fourth, the mortgage under which the seizure and sale were made. The sheriff proceeds in his deed to say : " and having frequently cried said property to the highest bidder, the Union Bank of Louisiana, by her agent, *Arthur Denis, Esq.*, became the purchaser for the price of $7,670, on the terms and conditions above mentioned, *and subject to the mortgages above specified*."

Immediately after executory proceedings were commenced by the bank, the plaintiff, *Mary W. Newcomb*, instituted this suit, the object of which was to regulate the effects of the seizure. After stating the foundation of her claim, she averred that the mortgage granted to secure the original stock loan was the only mortgage entitled to preference over that existing in her favor; that the effect of the act of 1839, in which *Mrs. Duplantier* intervened, was to raise the vendor's mortgage retained by the estate which she administered, whereupon that in favor of the minor children of *Newcomb* instantly attached, and acquired precedence over all other mortgages upon the land. She prayed that the proceeds of the sale should be applied in satisfaction of her demand, after paying the bank the sum remaining due upon the original stock loan. The under-tutor and tutor of the plaintiff's minor co-heirs also intervened in the proceedings, adopting the allegations of the plaintiff's petition, and uniting in a similar prayer. There was a judgment for the defendants in the court below, and the plaintiff and intervenors have appealed.

A number of serious questions have been presented in the pleadings, and in the printed arguments submitted by counsel, but the most important to the decision of the cause is, to determine the true amount for which the property was adjudicated to the bank at the sheriff's sale. The plaintiff contends that, having been sold subject to the previous mortgage in favor of the bank for $7,875, that sum is to be added to the defendants' bid, and that the price of adjudication was thus $15,546, instead of $7,670.

When a mortgage or privilege exists on the property offered for sale under execution, the sheriff is required to give notice that the property is *sold subject to all privileges and hypothecations* with which it may be burthened, and the purchaser is required to pay to the sheriff only the excess of the price over the privileges and special mortgages. Art. 679. The recital then by the sheriff in his deed, that the property was sold, " *subject to the mortgages specified*," added nothing to the consequences which the law attaches to adjudications made by sheriffs, nor to the obligations which it imposed upon the purchaser. If the clause had been omitted altogether, the law would have supplied it, and the obligations and rights of the purchaser would still have remained the same. A sale under execution may no doubt be made for a sum fixed, and for the additional amount of previous mortgages ; but unless such appears distinctly to be the terms upon which the property was offered, the purchaser will not be presumed to have given more than the precise sum bid. There is no statement in the sheriff's deed that the adjudication was for a sum over and above the special mortgages, nor does the return refer to any other price than the sums for which the twelve-months' bonds were given. In the case of *Rowly* v. *Rowly*, 19 La. 576, relied on by the appellants, the property was adjudicated subject to the *payment* of the mortgages specified. The court held, under the

evidence in that case, that a certain special mortgage had been assumed by the purchaser, and that its amount was to be added to the price bid. In the present instance, we find no terms used in the sheriff's deed or return, which indicate that the property was offered upon any other conditions than those required by law, and which are usual at sheriff's sales; nor is any fact disclosed by the evidence tending to the conclusion that the purchaser would be required to assume, or that he did assume, the mortgage, in addition to the sum bid. See case of *Balfour* v. *Chew*, 4 Mart. N. S. pp. 154 and 162 to 165. We consider that the adjudication was for a fixed sum, and that the purchaser is bound for nothing beyond the sum bid.

It is next urged that, if the amount of the first mortgage be not added to the bid, then the sum for which the property was adjudicated falls short of the previous special encumbrances, and that there was no sale. This does not follow as a necessary consequence, when the previous special mortgage exists in favor of the judgment creditor. An adjudication for a sum less than the amount of the privileges and previous special mortgages is only prohibited, when those encumbrances are owned by *other persons* than the judgment creditor. C. P. arts. 683, 684. This provision of law is established in the interest and for the protection of the claims entitled to these preferences, and when the judgment creditor is himself the owner of the previous incumbrances, as is the case in the present instance, and appears at the sale and assents to the adjudication, no other party can complain of the insufficiency of the price. The evidence shows that, although there appeared by the mortgage certificate to be a special mortgage inscribed in favor of the bank for $7,875, the debt had been reduced by payments, and that there actually remained due, at the date of the sale, only $5,062 50. There was thus in reality an excess of price over the amount of the previous mortgage.

We conclude that the sale is valid. It remains to determine how the proceeds are to be applied. As regards the precedence to which the mortgage for the original stock-loan is entitled, there is no contest. This claim, with interest up to the date of the sale, is to be first paid. After its extinction there still remains a surplus. This residue, it is urged, should be applied to the claim of the plaintiff and intervenors, whose mortgage, it is contended, attached and acquired precedence over the second mortgage granted by *Newcomb* to the bank, in consequence of the postponement made by *Mrs. Duplantier*. This claim is based upon the hypothesis that *Mrs. Duplantier* released her mortgage, an assumption that is not supported by the terms of the act. *Mrs. Duplantier* did not cancel her mortgage, but merely gave precedence and priority to that of the bank. The mortgage in favor of *Duplantier's* succession has never ceased for a moment to be in full force, but the advantages of its rank, as far as relates to the parties to the present controversy, enure to the bank. The validity of that act cannot be contested by the plaintiff. The only parties by whom it could be questioned are not before the court. The surplus of the price after paying the original stock-loan is less than the amount of the postponed mortgage, and the entire sums must be applied to the second mortgage of the defendants.

The conclusions at which we have arrived upon these points, render it unnecessary to consider others which have been urged by the counsel on both sides. *Judgment affirmed.*