[ No. 1227. Decided October 13, 1894.]

MYRON W. PACKARD *et al.*, *Respondents*, v. JOHN DELFEL *et al.*, *Defendants*, THE WASHINGTON NATIONAL BUILDING, LOAN AND INVESTMENT ASSOCIATION, *Appellant.*

MORTGAGES — EQUITABLE LIEN — PAROL RELINQUISHMENT — AGENCY — ATTORNEY AND CLIENT.

Although a mortgagee has taken a mortgage upon a certain lot of land with actual knowledge of the fact that the lot had been omitted by mistake from the mortgage given to a prior mortgagee, yet the second mortgage is entitled to priority, upon showing that

his mortgage was given upon the understanding that the first mortgagee should relinquish his equitable claim, upon the performance of certain conditions, and that these conditions had been fully performed; under such circumstances, no record relinquishment of the rights of the first mortgagee is necessary.

Where a person authorizes an attorney to act for him in reference to a certain mortgage and see that it is all straight, and that whatever he does in the matter will be all right, such attorney becomes an agent, although he serves without compensation, and his acts in reference to the mortgage are binding on his principal.

*Appeal from Superior Court, Snohomish County.*

*Strudwick & Peters,* for appellant.

*W. R. Andrews,* for respondents.

The opinion of the court was delivered by

DUNBAR, C. J. — Respondents bring this suit to reform a mortgage that it may cover, among others, lots 11, 12 and 13, in block 1, E. C. Ferguson's addition to Snohomish, the description of the block being omitted from the instrument, respondents contend, by the mutual mistake of its parties; and to foreclose the same upon one of these, viz., upon lot 11.

It is contended, and is, we think, shown by the testimony, that on the 17th day of February, 1890, Aaron Parker and Lavina L. Parker, husband and wife, executed their promissory note to the respondents for $912.90 with interest. It came due in six months after its date. At the time of making this note, and with the intention of securing the payment of it, the Parkers executed to the respondents their mortgage upon certain real property in Snohomish county, and in the execution of this mortgage the mistake above mentioned was made. Afterwards, on July 26, 1890, Aaron Parker died, leaving a will by which he devised to his wife, Lavina Parker, all his estate, except a small legacy to each of the children, and made her sole executrix. Shortly after Lavina Parker executed a bond

for a deed to Julius Ross, the father of the defendant Lizzie Delfel, for the lot 11, which is the lot in controversy. About that time Ross agreed with Mrs. Delfel and her husband to turn the property over to her, and the Delfels built a small house on it and lived therein. In November, 1890, Mrs. Parker and the respondents had a settlement together of sundry matters, at which they charged her with items amounting in the aggregate to $2,731.35, and credited her with various items amounting to $2,870. In the debits was included respondent's note for $694.75, and among the credits was the item of $700 due, as then thought, from J. Ross, and a bond for a deed to the other two lots originally embraced in the mortgage for $1,800. Some time later in the same year, the Delfels commenced the erection of a large building on this property, and for the purpose of building it made an application to borrow money of the Washington National Building, Loan and Investment Association. Application was made to respondents that they, respondents, should release their first mortgage and take one second to a mortgage that was proposed to be given to the appellants, the loan association having objected to the title as it then stood. This mortgage was executed, although no formal release was made. Without discussing the question urged by appellant that the respondents should be compelled to first exhaust lots 12 and 13 in satisfaction of their mortgage before proceeding against lot 11, the testimony of the witnesses, both for appellant and respondents, convinces us that the agreement between respondents and the Delfels and the building association, that the respondents should relinquish all right they had to lot 11, if additional securities were furnished to respondents, including a certain note with two sureties, secured by a second mortgage, was carried out and performed. The account which the respondents demanded be incorporated in the note was incor-

porated; the sureties, whom Packard requested, signed the
note; the mortgage was executed according to agreement,
and it was delivered to Ault & Munns, a firm of attorneys
who were evidently authorized by Packard to receive it
when it was executed.

Even disregarding testimony of the witnesses for the de-
fense, and considering only the testimony of Ault & Munns
and of Packard himself, we are fully convinced that Ault
& Munns were authorized by Packard to act as his agents
for this purpose.    It is true they do not say so in so many
words, but the legal conclusion flows from the acts, words
and circumstances which they recite.    Mr. Munns testifies
that Packard left the matter in their hands to see that it
was all straight.    If this is true Ault & Munns certainly
had power to act for him, and it matters not that they did
not see fit to charge him anything for their services.    The
testimony of Packard is still more conclusive that he au-
thorized them to act for him, and told them that whatever
they did in the matter would be all right.    The subse-
quent action of the attorneys also tends to sustain the
theory that the agreement had been fully executed and
that nothing else remained for the defendants to do; for
without some special agreement to that effect, which does
not appear to have been made, it would not have been the
duty of the defendants to record the mortgage which they
had executed.    Their duty ceased with its delivery.    But
in this case Munns took the mortgage to the auditor's of-
fice for record, evidently taking it for the benefit of, and
as the agent of, the beneficiary, Packard, but that it was
not recorded by reason of an objection raised by the
auditor that some back taxes had not been paid.    These
taxes would have been a lien against the land equally
under the first mortgage under which Packard was claim-
ing, and he did not get rid of that lien by refusing a second
mortgage and relying on his first one.    So far as his re-

linquishment of his first mortgage is concerned, if we correctly read the record, which we confess has bothered us some, there was no recorded claim to relinquish, as lot 11 was not described in the mortgage; and it is only by reason of actual knowledge that the appellant here would be bound at all, and if the respondents agreed to relinquish this claim, upon certain conditions being performed, and those conditions were performed in accordance with the contract, no record relinquishment was necessary.

The judgment will be reversed, and the cause remanded with instructions to declare the appellant's mortgage on the lot the first mortgage. The appellant will recover costs both in this court and in the court below.

HOYT, STILES and ANDERS, JJ., concur.