MITCHELL *v.* WEST END PARK COMPANY *et al.*

No. 7803.   December 10, 1930.   Rehearing denied February 14, 1931.

*Breen, Finch & Padgett,* for plaintiff in error.

*Tye, Thomson & Tye, J. W. DeLoach, Roy S. Drennan, C. L. Padgett,* and *E. G. Jackson,* contra.

HINES, J.   On January 9, 1929, the West End Park Company, by contracts in writing, agreed to sell to Black lots 25 and 26 of that company, for a consideration of $1750 each, of which $250 was to be paid in cash upon the purchase-money of said lots, and monthly notes for $25 each were to be given for the balance of the purchase-money of each of the lots.   Each of said contracts con-

tained this provision: "It is hereby agreed by parties of the second (W. End Pk.) part hereto that upon completion of house on above-described property, to be erected by party of first part (Black), that they will subordinate the balance of $1500.00 to a first-mortgage loan to be placed by party of the first part, not to exceed 60% of the appraised value of house and lot. Said second mortgage to be secured by purchase-money security deed. Party of first part to pay expense such as recording, etc., which may be incurred. Appraisal to be made by a reputable company and approved by parties hereto. Sold subject to usual restrictions in this subdivision." On January 10, 1929, the company executed its warranty deeds to Black to each of said lots, and simultaneously therewith Black executed to the company his deed to each of said lots to secure the sum of $1500, being the balance of the purchase-money thereof, and represented by monthly notes of $25 each. These deeds contained a provision that if any note became as much as 30 days past due, the entire series might be declared due at the option of the holder; and this additional provision: "It is specifically understood and agreed between the grantor and grantee herein that the grantor (Black) herein agrees to erect to completion a residence on the above-described lot within six months from date, and upon the completion of same the grantee herein agrees to subordinate any unmatured, unpaid notes, secured by this deed, to become a lien, subject only to a first loan not exceeding sixty per cent. of the appraised value of said house and lot; said appraisal to be made by Georgia A. Campbell and George J. Morris of Atlanta, Georgia. If said residence is not erected to completion prior to six months from this date, then the grantee herein automatically shall be released from its agreement to subordinate said notes hereby secured in accordance with the terms of the above, time being of the essence of the above. In consideration of this provision of this deed, the grantor agrees to erect said residence at a cost of not less than $4000."

On January 16, 1929, Black executed to Mrs. Ella Mitchell his deed to each of said lots, to secure a loan of $2500 on each. The above deeds from the company to Black, the loan deeds from Black to the company, and the loan deeds from Black to Mrs. Mitchell were filed for record simultaneously on January 16, 1929, at 4 p. m. The cash payments of $250 on the purchase-price of each

of said lots were made by Black to the company out the proceeds of the loans made by Mrs. Mitchell to him. It was understood both by Black and the company that the loans from Mrs. Mitchell to Black were temporary loans, were to mature in three months, and were to be paid out of the proceeds of the permanent loan to be obtained by Black upon the completion of the houses. All the balance of the proceeds of the loans made by Mrs. Mitchell to Black, after payment of the initial payments on the purchase-money of these lots, went to pay laborers and materialmen for labor performed and material used in the improvement of these lots. Mrs. Mitchell had actual notice of the loan deeds from Black to the company before she made the above loans to Black and obtained from him deeds to secure the same.

On May 8, 1929, C. W. Long, W. M. Meadows, and C. D. Bailey filed separate suits against Black, to foreclose their liens on said lots and the improvements thereon, for labor performed by them in the erection of the houses on said lots. In their petitions these parties alleged that they had filed their liens and had had them recorded as provided by statute, that the only interest which Black had in these properties was his equities of redemption, that the legal title had been put in Mrs. Mitchell and the West End Park Company by the above loan deeds from Black to them, that Black had undertaken to improve said lots by erection thereon of two six-room brick veneer bungalows, that he had partially completed the same, that he was unable to obtain material necessary to complete the same, that he had abandoned the work, and that these buildings were left in an incomplete state. They prayed for judgments against Black for the sums claimed by them, that their liens be set up and foreclosed, that other creditors similarly situated be permitted and required to intervene and set up their claims, that all parties be restrained from prosecuting separate actions for foreclosure of their liens except in this proceeding, and that a receiver be appointed to take charge of the properties. These suits were consolidated, and a receiver was appointed as prayed. The company, after the appointment of the receiver, advertised the properties for sale, under powers in its security deeds. These plaintiffs then filed an amendment to their petition, in which they sought to enjoin this sale upon the ground that these properties had been put in the hands of a receiver. On the hearing of the appli-

cation for injunction the trial judge passed an order permitting the sale by the company under the powers of sale in its security deeds, but directing that the proceeds of the sale be collected by the receiver, that the sale be had free of all liens, claims, title, or interest of the parties, and that such liens, claims, title, or interest be transferred to the proceeds of the sale. The sale was had, and Mrs. Mitchell bid in lot 26 (25?) for $2275 and lot 27 (26?) for $3000. The sale was approved by the court, and the judge directed that the proceeds be deposited with the clerk of the court subject to its order. On June 12, 1929, Mrs. Mitchell intervened in said case and prayed for judgment against the defendant for $5000, with interest at 8 per cent., and 10 per cent. attorney's fees; and that the liens of her security deeds be decreed to be first liens upon the properties or their proceeds.

On January 17, 1929, J. E. Creel, trading as Union City Lumber Company, began furnishing material which was used in the improvement of said lots, and furnished material to the amount of $3300. He received on this a credit of $600. On January 18, 1929, and within 90 days from the last delivery of this material, he filed and had recorded his liens for the same. He commenced proceedings to foreclose his liens within one year from the time his bills for said material became due. Creel in writing authorized Mrs. Mitchell to advance to Black $125 on lot 26, to be used in the purchase of flooring, doors and hardware for erecting the house on that lot, and that this amount, together with the amount held by her against said lot under her loan deed for pay-rolls, should be paid out of the loan and should come ahead of his claim. In this writing Creel further agreed that Mrs. Mitchell could advance the sum of $220 on lot 25, and that this amount should be paid out of the permanent loan, and that said amount, together with the amount of the pay-roll already advanced by her under the loan deed held by her against this lot, should be paid ahead of his claim, and that the claims held by him for material used in the improvement of said property were thereby subrogated to the claims above stated and the claims already held by Mrs. Mitchell under her loan deeds to these lots.

Black became insolvent and was unable to complete the buildings on these lots. Mrs. Mitchell introduced evidence tending to show that these buildings could be completed by the outlay of

$600; and the land company introduced evidence to show it would require the expenditure of $3,300 to complete them. The case finally resolved itself into the question of the priorities of the liens of the land company and Mrs. Mitchell under their respective loan deeds, and the lien of Creel. The trial judge directed a verdict establishing in favor of the West End Park Company a first lien under its loan deeds upon the proceeds of the sale of these lots in the hands of the receiver, and judgment was entered accordingly. To this direction and judgment Mrs. Mitchell excepted, for the reason that her loan deeds constituted a first lien upon said funds, and that her loan deeds were entitled to priority over those of said company. Creel made a motion for direction of a verdict in his favor, establishing the amount of his claim as a first lien on the proceeds in the hands of the receiver; and to the refusal of the court to direct such verdict Mrs. Mitchell excepted upon the ground that the lien of Creel was superior in dignity to the loan deeds of said company, and that she had been subrogated to Creel's lien under the agreement between him and her above set out.

■ What is the standing as to priority of the liens of the West End Park Company under its loan deeds from Black to these lots and the liens of Mrs. Mitchell under her loan deeds from Black to these lands? In deciding this question it is unnecessary to determine whether the loan deeds from Black to this company became completed conveyances without delivery on the dates when they purport to have been executed, or whether they only became such completed conveyances at the time when all the deeds involved were filed for record. At the time Mrs. Mitchell received her loan deeds from Black to these lots she knew of the existence of the loan deeds from Black to the West End Park Company; and she is chargeable with notice that these loan deeds were given to secure a balance of the purchase-money due by Black to that company. If a purchaser of land, at the instant of receiving his deed, executes and delivers two mortgages of it, one to his grantor to secure a payment of a part of the purchase-money, and the other to a third person to secure his debt to the latter, and all the mortgages are filed for record at the same moment, the mortgage to his grantor takes precedence. The deed and the mortgage for the purchase-money are parts of one transaction and give the pur-

chaser only an instantaneous seisin. Where the deed and mortgage are delivered at the same time, the several grantees must be considered as knowing all that took place concerning them; and the third person taking a simultaneous mortgage to secure a debt is chargeable with knowledge of the mortgage for the purchase-money to which his own became subject, as effectually, by his knowledge of its existence, as it would have been if it had been posterior in time of entry for record. In case of a sale and conveyance of land, and a mortgage taken at the same time to secure the payment of the purchase-money, the deed and mortgage are considered parts of the same contract, constituting one act, and justice and equity require that no prior judgment against the mortgagor should intervene and attach upon the land during the transitory seisin, to the prejudice of the mortgagee. *Scott* v. *Warren,* 21 *Ga.* 408; *Cook* v. *Cook,* 67 *Ga.* 381; *Rasin* v. *Swann,* 79 *Ga.* 703 (4 S. E. 882); *Courson* v. *Walker,* 94 *Ga.* 175 (21 S. E. 287). Deeds to secure debts are equitable mortgages. *Blumenfeld* v. *Citizens Bank & Trust Co.,* 168 *Ga.* 327 (2d) (147 S. E. 581).

So in this case the liens created by the loan deeds from Black to Mrs. Mitchell would generally be inferior to the liens created by the loan deeds from Black to the West End Park Company to secure the purchase-money of these lands. But there are exceptions to this general rule. Generally two mortgages executed on the same day are of equal date, and, if both are recorded in time, are entitled to share pro rata in a fund not sufficient to satisfy both. *Bussell* v. *Carr,* 38 *Ga.* 459. But while ordinarily mortgages executed on the same day have equal liens on the mortgaged property, yet where facts apparent on the face of the mortgages show that it was the intention of the parties to give preference to one over the other, the lien so preferred will be enforced, though all were executed on the same day. *Coleman* v. *Carhart,* 74 *Ga.* 392. The parties may, as between themselves, make a valid agreement, though it be verbal only, that one of two mortgages shall be prior to the other, and the order of record is then immaterial unless they are subsequently assigned to other persons who have no notice of the agreement. Mut. L. Ins. Co. *v.* Storges, 33 N. J. Eq. 328; 1 Jones on Mortgages, § 608, note 58, and cit. It is also true that, without any agreement, there may be facts and circumstances which will entitle one of two mortgages recorded at

the same time to an equitable priority over the other. Id.; Stafford v. Van Renselaer, 9 Cow. (N. Y.) 316. So it is also true that although one mortgage may have been recorded before another, there may be facts which would entitle the two mortgages to stand upon an equality or a junior mortgage to take precedence of a senior one. Thus the advancement of money by the makers of building loans is sufficient acceptance of the vendor's agreement to subordinate purchase-money mortgages to building loans on the same property, without such makers joining in the agreement. Londner v Perlman, 129 App. Div. 93 (113 N. Y. Supp. 420). A second mortgage executed to obtain money to redeem land from an execution sale against the mortgagor, under an express agreement that it shall be a prior lien, is superior to the rights of the first mortgagee benefited by the redemption. New England Mortgage Co. v. Fry, 143 Ala. 637 (42 So. 57, 111 Am. St. R. 62).

These deeds were executed by Black to Mrs. Mitchell with the knowledge and consent of the West End Park Company. The initial payments on the purchase-price of these lots were made from the proceeds of these loans. Thus the land company reaped a very substantial benefit from this transaction. It received $500 of the money loaned by Mrs. Mitchell to Black. The loans from Mrs. Mitchell to Black were temporary loans to be paid off in three months. In the loan deeds from Black to this company it was agreed between the parties that the company would subordinate the payment of the purchase-money due to it on these lots to a loan equal to 60 per cent. of the value of the lots and improvements. Thus it is shown that the company was willing to have put upon these lots a junior mortgage superior to its loan deeds made to secure the purchase-money thereof. In these circumstances a jury would have been authorized to find that the company was willing to subordinate its claim for purchase-money to the loan deeds made to Mrs. Mitchell by Black.

But it is insisted by counsel for the company that it was understood by Black, the company, and Mrs. Mitchell, that the loans from Mrs. Mitchell to Black were temporary loans, were to mature in three months, and were to be paid out of the proceeds of the permanent loan to be obtained by Black upon the completion of the houses; and from this understanding counsel for the land company draw the conclusion that Mrs. Mitchell was only to be paid

from the proceeds of the loan, and not otherwise. This conclusion is not well founded. Mrs. Mitchell took loan deeds to these lots and the improvements to be put thereon to secure payment of the money which she advanced to Black to pay for labor performed and material used in the erection of these houses. The mere fact that there was an understanding that these loans were to be paid out of the permanent loan which Black was authorized, on certain conditions, to make under the agreement contained in his loan deeds to the company, does not authorize the conclusion that if for any reason Black failed to comply with the conditions which would authorize him to procure such loan, or was not in position to do so, Mrs. Mitchell should lose the money she had loaned Black and which he had used in erecting the houses. Before we could reach this conclusion there must be clear evidence of an understanding that she should not enforce her loan deeds unless the permanent loan was obtained by Black. The mere fact that it was understood by Black, the land company, and Mrs. Mitchell that she should be paid from such permanent loan does not show that she was to go unpaid and lose the money she advanced to Black, a portion of which went to this company to make initial payments on the purchase-money of these lots; and that if for any reason Black did not obtain the permanent loan, her security deeds should thereby become ineffectual and void. It can well be inferred that if the company was willing to subordinate its claim for the purchase-money of these lots to a permanent loan made to pay liens of laborers and materialmen, it was willing to subordinate its claim to the temporary loans made for these purchases. We have seen that the parties may, as between themselves, make a valid agreement, though it be verbal only, that one of two mortgages shall be prior to the other; and that the order of execution or record is then immaterial unless they are subsequently assigned to other persons who have no notice of the agreement. By parity of reasoning this principle is applicable to loan deeds.

Furthermore, a senior mortgagee has an unquestionable right to waive his priority in favor of a subordinate mortgagee. It is perfectly competent for a mortgagee to waive or release his lien in favor of a junior encumbrancer. But this will not extinguish the elder mortgage, but merely postpone it to the junior one. Bolling *v.* Roman, 95 Ala. 518 (10 So. 553) ; Mullanphy Savings

Bank v. Schott, 135 Ill. 655 (26 N. E. 640, 25 Am. St. R. 401); Beasley v. Henry, 6 Ill. App. 485; Loucks v. Union Bank, 2 La. Ann. 617; Thomas v. Equitable Bldg. &c. Asso., 215 Pa. 259 (64 Atl. 531); Packard v. Delfel, 9 Wash. 562 (38 Pac. 208); Clason v. Shepherd, 6 Wis. 369. So a senior mortgagee may waive his lien in favor of a person who advances money to the mortgagor to enable him to improve the property or replace burned buildings, the enhanced value of the property being of sufficient consideration. Godfrey v. Rogers, 3 Cal. 101; Darst v. Bates, 95 Ill. 493; 41 C. J. 504 (§ 432) 2. A lien of a mortgage may be waived by implication. Id. (§ 433) b. A mortgagee of land may be estopped to assert the priority of his lien as against a subsequent encumbrancer, when it would be unconscionable to enforce his security to the prejudice of such subsequent encumbrancer. 41 C. J. 593, (§ 550) i. Without any agreement there may be facts and circumstances which would indicate an intention to make one of two mortgages recorded at the same time prior to the other. Stafford v. Van Renselaer, 9 Cow. (N. Y.) 316; Rhoades v. Canfield, 8 Paige (N. Y.), 545; Freeman v. Schroeder, 43 Barb. (N. Y.) 618. So we are of the opinion that if the land company agreed that the grantor in its loan deeds could obtain a temporary loan from Mrs. Mitchell in order to enable him to make his initial payments on the purchase-money of these lots and to enable him with the balance to erect the buildings on these lots which he had undertaken to do under his agreement with the company set out in these loan deeds, and Mrs. Mitchell made the loan upon the fact of this agreement, taking loan deeds from Black to secure the same, and the company received from the proceeds the initial payments on the purchase-money of these lots, and the remainder of the loan was used in erecting the buildings on these lots, the company would be estopped from asserting that its liens were entitled to priority over the payment of the liens of Mrs. Mitchell.

■ But it is urged by counsel for the land company that the right of Mrs. Mitchell to enforce the liens of her loan deeds in preference to the liens of the company under its loan deeds depends upon the contract between Black and the land company, which is set out in its loan deeds, under which Black could place a permanent loan upon this property if he had completed the houses on the same within the time prescribed in the contract.

It is insisted that under this contract Black was not entitled to place such permanent loan, for the reason that he failed to complete the buildings; and that as Mrs. Mitchell is seeking to enforce this contract for her benefit, she stands in no better position than Black himself stood. Under one feature of her intervention Mrs. Mitchell seems to be undertaking to enforce this contract in her behalf. Before she could succeed in doing so, she would have to show that Black was entitled to enforce this agreement. If Black could not enforce it, she would not be entitled to enforce it. *Union City Realty Co.* v. *Wright,* 145 *Ga.* 730 (89 S. E. 822). The failure of Black to complete his contract would hardly entitle the land company to enforce its liens against these lots and the improvements put thereon by the labor and material for which Mrs. Mitchell paid. The liens which the company obtained under its loan deeds were liens on the naked lots; and it would hardly be equitable for this company to enforce these liens against the property as improved, so as to entirely exclude Mrs. Mitchell from any participation in the proceeds of the sales of these lots as improved. But we do not think it necessary in this case to pass upon what would be the rights of the company and Mrs. Mitchell under this view of the case. This is so for the reason that Mrs. Mitchell is undertaking to enforce her liens under her contract with Black, which was authorized by the land company, and from which the land company derived substantial payments on the purchase-money of these lots. That is the contract on which Mrs. Mitchell is relying; and we hold that when the land company consented to the arrangement by which Black procured the loan from Mrs. Mitchell, and shared in the proceeds thereof, the company waived its liens under its loan deeds from Black, and is estopped from asserting the priority of its liens over those of Mrs. Mitchell.

■ But it is insisted that it would be inequitable to permit Mrs. Mitchell to receive the whole of the proceeds of the sale of these lots, to the exclusion of the land company. We can not agree to this contention. The liens of Mrs. Mitchell embraced the property as improved. The liens of the land company were, as we have undertaken to show, postponed to her liens. When the lots as improved were sold and were purchased by her, she was entitled to be paid in preference to the land company the amount of her liens in full. When the land company waived its liens on

these lots in favor of the liens of Mrs. Mitchell, she became entitled to have her liens paid first out of the proceeds of the sale of the property.

Creel, after the execution of the loan deeds from Black to Mrs. Mitchell, furnished material which went into the erection of the houses on these lots. The value of these materials was $3,300, on which he was paid the sum of $600, leaving a balance due him of $2,700 for the material so furnished. He filed and had recorded his lien for this material within the time prescribed by law; and he intervened in this case for the purpose of foreclosing his lien also within the time prescribed by law. The lien of Creel for material was inferior to the liens of Mrs. Mitchell under her security deeds. *Picklesimer* v. *Smith,* 164 *Ga.* 600 (139 S. E. 72). The trial judge awarded Creel judgment for his claim against Black, and held that Creel would have been entitled to claim any excess if there had been any over the amount due Mrs. Mitchell. To this judgment Creel does not except. Mrs. Mitchell excepts to it on the ground that the lien of Creel was superior in dignity to the loan deeds of the company, and that she had been subrogated to Creel's lien under the agreement between him and her above set out. What would have been the right of Creel in the premises if he had excepted to this judgment is not for decision, as he did not except. Under the writing from Creel to Mrs. Mitchell, the latter was not subrogated to Creel's lien. His agreement was that his lien should be postponed and come behind her lien. This does not amount to subrogation of Mrs. Mitchell to Creel's rights under his lien. There is no evidence that she had paid out moneys which she was authorized to pay out under this agreement, or that she had paid any part of the lien of Creel. This being so, she was not hurt by the verdict directed and the judgment rendered in this matter. Besides, under the ruling made in this case she is given a first lien upon the proceeds of the sale of these lots as improved. We do not think she has been injured by the rulings made by the court in this matter; and the judgment should not be reversed on that ground. Besides, Mrs. Mitchell does not in her pleadings pray to be subrogated to the rights of Creel under his materialman's lien, and that this lien be foreclosed for her benefit.

*Judgment reversed. All the Justices concur.*