### 38320. CAMERON et al. v. CHURCHILL MORTGAGE CORPORATION.

SMITH, Justice.

Appellants, brother and sister, having senior liens on a tract of land, executed subordination agreements by which they agreed to subordinate their liens to the lien of a construction loan. Appellants contend the subordination agreements should be set aside. The trial court disagreed. For reasons that follow, we affirm.

Appellants owned a 322-acre tract of land in Walton County. On October 22, 1973, they sold 23 acres of this land to Clairmont Development Company, Inc., thinking the construction of a shopping center by Clairmont would enhance the value of their remaining property. The total purchase price was $277,560 of which $235,926 was secured by a promissory note and a deed to secure debt.

The deed to secure debt contained the following language: "Grantees herein [appellants], by the acceptance of the within Deed to Secure Debt, covenant and agree that the lien of the within Deed to Secure Debt and the indebtedness secured thereby shall be junior and subordinate to the lien of a construction loan covering the property herein described, placed on such property by Grantor, provided said lien or liens placed on said property shall be for the purpose of obtaining construction financing for the erection of improvements on the property herein described and further provided that such financing is obtained from reputable and recognized lending institutions, and upon request of the Grantor, the Grantees covenant and agree to execute the necessary subordination agreement and to join in any Deed to Secure Debt or Deeds to Secure Debt without personal liability, in order to fully effectuate the aforementioned subordination."

In December of 1973, Clairmont sought and obtained a construction loan commitment from appellee, then known as Mortgage Associates. The loan was for a maximum amount of $1,200,000; however, appellee was not obligated to disburse more than $110,000 until a "take out commitment . . . and/or a commitment for participation in the construction loan" was received by appellee.

The loan was to be secured by a "first" mortgage on the 23 acres.

Thereafter, Charles Scoma, secretary-treasurer of Clairmont Development Co., Inc., traveled to Alabama, where appellants resided. There appellants each signed a subordination agreement which was also signed by Scoma, which stated in part: "The said Borrower has applied for loans not to exceed the total sum of $1,200,000 to be secured by a Security Deed or Security Deeds conveying said property to Mortgage Associates, Inc. (hereinafter designated as the 'Lender'). The said Lender has declined to make such loans unless said outstanding Security Deed shall be subordinated to said new loans and the Deeds securing same.

"Therefore, in consideration of One Dollar ($1.00) in hand paid by the said Borrower to the undersigned, and in consideration of the consummation of said loans in reliance upon this instrument, the undersigned hereby waives and subordinates all right, title or interest under said outstanding Security Deed above set forth, or otherwise, in or to the property therein described, as against said loans to be made by the said Lender, so that the Security Deeds to be executed by the said Borrower to said Lender shall convey title to said property superior to said outstanding Security Deed of the undersigned and to the indebtedness secured thereby."

Total disbursements under the construction loan only amounted to $162,000 because of Clairmont's inability to comply with the conditions of the loan. Clairmont defaulted on the loan and appellee instituted foreclosure proceedings. Appellants filed this action seeking to have the subordination agreement set aside. The case went to trial and appellants suffered a directed verdict in favor of appellee.

1) In their first two enumerations of error, appellants contend that because there was evidence of lack of consideration, a directed verdict should not have been granted.

Appellants acknowledge that a subordination clause in a mortgage or other security agreement needs no consideration other than the secured indebtedness. They contend that the subordination agreements executed in January 1974 were agreements not a part of the original security agreement and therefore required independent consideration.

However, it is clear that the subordination agreements executed by appellants "were intended to fulfill [their] obligation in [the] security deed to waive [their] prior lien in favor of the maker of a construction ... loan." *Rivers v. Rice,* 233 Ga. 819, 821 (213 SE2d 678) (1975).

Furthermore, "[t]he legal order of priority as between mortgages and other liens or claims may be fixed, reversed, or

modified by an agreement of the parties or by a waiver or release on the part of the senior lienholder." 59 CJS, Mortgages § 229. The agreement or waiver may be written or verbal. *Mitchell v. West End Park Co.,* 171 Ga. 878, 884 (156 SE 888) (1930). "[T]he advancement of money by the makers of building loans is sufficient acceptance of the vendor's agreement to subordinate . . . without such makers joining in the agreement." Id at 885. The prospect of the enhanced value of the property is sufficient consideration to support an agreement to subordinate a security deed to a construction loan. *Rivers v. Rice,* supra; *Mitchell v. West End Park Co.,* supra.

Appellants first two enumerations of error are without merit.

2) In their final two enumerations of error, appellants claim that appellee failed to consummate the loan contemplated by the subordination agreement and that the loan agreement was materially modified subsequent to their subordination agreement, to appellant's detriment. However, the evidence fails to show any modification of the loan agreement, nor does it show noncompliance by appellee with the terms of the loan agreement.

The subordination agreements signed by appellants reflect that the "said Borrower has applied for loans *not to exceed* the total sum of $1,200,000 . . ." (Emphasis supplied.) Payment of the full $1,200,000 was contingent upon appellee receiving a commitment from another lender satisfactory to it to participate in further advances under the loan or a similar commitment from a permanent lender to assume the long term financing. (See *Crider v. First Nat. Bank,* 144 Ga. App. 536 (241 SE2d 638) (1978) for a more detailed discussion of the loan agreement.) Appellee did pay some $162,000 to Clairmont. Since no satisfactory commitment was obtained, appellee was not obligated to disburse to Clairmont the full $1,200,000.

The trial court did not err in directing a verdict against appellants.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 4, 1982.

*Winship E. Rees,* for appellants.
*Hansell, Post, Brandon & Dorsey, F. Carlton King, Jr., R. Matthew Martin,* for appellee.