A01A0636. F & W AGRISERVICES, INC.·et al. v. UAP/GA. AG. CHEM., INC.
(549 SE2d 746)

RUFFIN, Judge.

This appeal arises out of a dispute between creditors. UAP/Ga. Ag. Chem., Inc. ("UAP") sued F & W Agriservices, Inc. and King Cotton Gin, LLC (collectively "F & W"),[1] alleging that the defendants converted cotton crop proceeds in which UAP held a security interest. UAP subsequently moved for summary judgment, which the trial court granted. F & W appeals, and we reverse.

"On appeal, we review the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in the light most favorable to the nonmoving party, demonstrates any genuine issue of material fact."[2] Viewed in this manner, the evidence shows that James Darley obtained a farm operating loan, including a line of credit, from UAP. As collateral for the loan, Darley gave UAP a security interest in his cotton crops.

Darley exhausted his line of credit before he harvested his cot-

---

[1] F & W is a 25 percent managing member of King Cotton Gin, LLC. As its name suggests, King Cotton Gin gins cotton.

[2] *Rent to Own v. Bragg*, 248 Ga. App. 130 (1) (546 SE2d 9) (2001).

ton. Facing significant operating costs to harvest the crop, he asked UAP for additional financial help and arranged to have certain expenses paid. UAP, however, did not loan Darley additional funds for labor, fuel, and some other harvest costs. According to Darley, John Martin, a UAP salesman, suggested that Darley cover these other costs by obtaining advances on his cotton crop sales from F & W, which managed the cotton gin where Darley processed his cotton and also handled the cotton sales. Darley testified that UAP agreed F & W could make these advances on the cotton crop directly to Darley, despite UAP's security interest and the general requirement that all crop proceeds checks be made jointly to Darley and UAP:

> [Martin] said as long as you need the money for fuel or labor or whatever, you can just get [F & W] to advance you money against your cotton crop, which hadn't been harvested at that time. And I said, well, you know, those checks will be made jointly [to Darley and UAP]. You'll need to probably send [F & W] some kind of [re]lease or something, or I'll have [F & W] call you. And [Martin] indicated . . . that [F & W] could make the checks without putting their names on it, without putting [UAP's] name on them.

Darley believed that F & W would be paid back for any advances "out of the cotton."

Dennis Barrentine, president of F & W, testified that Darley asked him for an advance to finish the cotton harvest. Darley told Barrentine that UAP had advised him to get the advance from F & W. Barrentine understood from Darley that UAP had approved the advance and that, despite UAP's lien, F & W could deduct the advanced amounts from the money "due [Darley] on the cotton." Barrentine recalled that either he or Darley verified the arrangement with UAP in a telephone conversation. Apparently, however, Barrentine never saw any written confirmation of UAP's agreement.

Martin, the UAP salesman, denied advising Darley to obtain advances from F & W. According to Martin, Darley mentioned that he planned to obtain a loan from F & W to harvest his crop, but Martin did not discuss the details of that loan with Darley or suggest that F & W could take any payments out of the cotton proceeds. UAP's credit manager similarly testified that UAP did not give F & W oral or written authorization to deduct the advanced funds from the crop proceeds checks. Martin admitted, however, that UAP needed Darley to harvest his cotton crop so that Darley could pay back the operating loan.

F & W advanced Darley $200,000 over several months. When

F & W later sold Darley's cotton, it deducted $200,000 from the sale proceeds. UAP reviewed the proceeds checks, which were made out jointly to UAP, Darley, and another party, shortly after they were issued. Although the checks clearly showed deductions for the advance, UAP did not question Darley or F & W about the subtracted amounts.

After Darley failed to make payments on his farm operating loan, UAP sued F & W. UAP claimed that F & W converted $200,000 by advancing funds directly to Darley and deducting the advance from Darley's crop sale proceeds, which were subject to UAP's security interest. The trial court subsequently granted summary judgment to UAP, finding that F & W "never received any written evidence from [UAP] that it agreed to release its lien on the crop proceeds which [F & W] inappropriately advanced."

On appeal, F & W argues that genuine issues of material fact remain as to (1) whether UAP subordinated its security interest to F & W's $200,000 claim; and (2) whether promissory estoppel precludes UAP from asserting priority over F & W's claim. We agree.

1. F & W argues that UAP subordinated its lien on Darley's cotton crop to F & W's claim, which entitled F & W to deduct $200,000 from the crop proceeds checks. The trial court rejected this argument, apparently because F & W received no written waiver or lien release. Under Georgia law, however, a written agreement is not necessary: "The legal order or priority as between mortgages and other liens or claims may be fixed, reversed, or modified by an agreement of the parties or by a waiver or release on the part of the senior lienholder. The agreement or waiver may be written or verbal."[3] Furthermore, even absent a specific agreement, a lienholder may waive priority by implication; "[w]ithout any agreement there may be facts and circumstances which would indicate an intention to make one of two [claims] prior to the other."[4]

The record contains evidence that a UAP representative encouraged Darley to secure advances on his cotton proceeds from F & W. Those advances allowed Darley to finish his harvest, which benefitted UAP. Evidence also indicates that, despite its security interest, UAP authorized Darley to receive the advanced funds directly, instead of jointly with UAP. Both Darley and F & W understood that F & W would recoup the advanced money from the cotton

---

[3] (Citation and punctuation omitted.) *North Ga. Sav. &c. Assn. v. Corbeil*, 177 Ga. App. 523, 524 (1) (339 SE2d 779) (1986); see also *Cameron v. Churchill Mtg. Corp.*, 249 Ga. 362, 363-364 (1) (290 SE2d 474) (1982).

[4] *Mitchell v. West End Park Co.*, 171 Ga. 878, 887 (1) (156 SE 888) (1930). As noted in *Mitchell*, which involved land mortgages, "[a] mortgagee of land may be estopped to assert the priority of his lien as against a subsequent encumbrancer, when it would be unconscionable to enforce his security to the prejudice of such subsequent encumbrancer." Id.

proceeds, and UAP did not initially object when it reviewed checks that clearly showed deductions for the advance. This evidence raises a question of fact as to whether UAP subordinated its interests in the crop proceeds to F & W's claim.

On appeal, UAP argues that F & W enjoyed no security interest in the crop proceeds and thus had no interest that could take priority over UAP's lien. Regardless of whether F & W was a secured creditor, however, subordination may have occurred. Under the Commercial Code, "a *creditor* may subordinate his right to payment of an obligation by agreement with either the person obligated or another *creditor* of the person obligated."[5] UAP could certainly elect to subordinate its claim to less than a secured creditor.[6] F & W advanced Darley $200,000 on his future cotton sales. Factual issues remain as to whether UAP subordinated its security interest to F & W's claim for these advanced funds. Thus, the trial court erred in granting summary judgment to UAP.

2. F & W also argues that the trial court erroneously granted UAP summary judgment on its promissory estoppel defense. We agree.

Under OCGA § 13-3-44 (a), "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." To establish a promissory estoppel claim, a party must show that (1) the promisor made certain promises; (2) the promisor should have expected that the party would rely on the promises; and (3) the party relied on those promises to its detriment.[7]

A promise is "a manifestation of an intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."[8] Darley's testimony about his conversation with Martin raises a question of fact as to whether UAP manifested an intention to waive priority of its security interest and permit an advance on the cotton proceeds.

A fact question similarly remains as to the second promissory estoppel requirement. According to Darley, Martin encouraged him to seek the advance from F & W. Under those circumstances, a jury could find that UAP should have expected F & W, a third party, to

---

[5] (Emphasis supplied.) OCGA § 11-1-209.

[6] Id.; see also OCGA § 11-1-201 (12) ("'Creditor' includes a general creditor, a secured creditor, a lien creditor and any representative of creditors.").

[7] *Nickell v. IAG Fed. Credit Union*, 213 Ga. App. 516, 519 (4) (445 SE2d 335) (1994); *Presidential Financial Corp. v. Francis A. Bonanno, Inc.*, 244 Ga. App. 430, 434 (2) (535 SE2d 809) (2000).

[8] (Punctuation omitted.) *DPLM, Ltd. v. J. H. Harvey Co.*, 241 Ga. App. 219, 221 (1) (526 SE2d 409) (1999).

rely on its promise.

Finally, Barrentine, F & W's president, testified that he advanced Darley $200,000 after Darley told him about the arrangement with UAP, which either he or Darley verified in a telephone call with UAP. This testimony at least creates a factual issue as to whether F & W reasonably relied on the alleged promise.[9]

Genuine issues of material fact surround F & W's promissory estoppel defense. Accordingly, the trial court erred in concluding that this defense is "without merit as a matter of law."

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 30, 2001 —
RECONSIDERATION DENIED JUNE 28, 2001 — ▮▮▮▮▮▮▮

*Ellis, Gatewood, Skipper & Farr, William D. Nesmith III*, for appellants.

*Gardner, Willis, Sweat & Goldsmith, Donald A. Sweat, Deena L. Plaire*, for appellee.

---

[9] Id. at 221-222 (reliance must be reasonable and not based upon preconceived ideas). UAP claims that, as a matter of law, F & W acted unreasonably by relying on Darley's representations about a promise allegedly made by UAP. Promissory estoppel, however, may apply to a promise that "induce[s] action or forbearance on the part of . . . a third person." OCGA § 13-3-44 (a). Clearly, a third party — here, F & W — can argue promissory estoppel even if the promise was not made directly to it. Given the facts of this case, the reasonableness of F & W's reliance is a question for the jury. See *Ambrose v. Sheppard*, 241 Ga. App. 835, 837 (528 SE2d 282) (2000) ("Questions of reasonable reliance are usually for the jury to resolve.").