A08A0376. SECURED EQUITY FINANCIAL, LLC et al.
v. WASHINGTON MUTUAL BANK, F. A.
(666 SE2d 554)

ADAMS, Judge.

The trial court granted summary judgment in favor of Washington Mutual Bank, F. A. by applying the doctrine of equitable subrogation to a dispute between Washington Mutual and another lender, Secured Equity Financial, LLC and a related party, who now appeal. The trial court concluded the undisputed facts justify the conclusion that, at the time it acquired a security interest in the property, Secured Equity was on constructive notice of a possible claim of equitable subrogation and that, therefore, its security interest was extinguished. For the reasons that follow, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).[1]

Construed in favor of the appellants, the record shows that in September 2000, Michael and Melanie Busby purchased property in Paulding County using a $102,550 purchase money loan secured by a deed to secure debt (the "original security deed"). On October 12, 2001, the Busbys obtained a home equity loan of $17,000 from Bank One secured by a second priority security deed; the deed states that it "may be secondary and inferior to the lien securing payment of an existing obligation [with] a current principal balance of approximately $101,000."

Although Bank One filed its security deed on October 25, 2001, the document was not recorded until January 18, 2002 because of internal delays at the courthouse. In the interim, on December 21,

---

[1] The appellee's brief does not conform to the rules of this Court. We remind the bar that the Rules of the Court of Appeals require that record and transcript citations must be to the volume or part of the record or transcript and the page numbers that appear on the appellate records or transcript as sent from the court below. See Rule 27.

2001, the Busbys refinanced the original loan, borrowing $107,264 from Franklin American Mortgage Company to pay off the original loan balance of $102,663.44, and entering into a new security deed (the "refinance security deed"), intending to give Franklin a first priority security interest in the property. On January 4, 2002, Franklin assigned the note and the refinance security deed to a predecessor of appellee Washington Mutual. The original security deed was cancelled of record in March 2002.

In early 2004, the Busbys defaulted on both loans, causing both Washington Mutual and Bank One to initiate foreclosure proceedings. Those proceedings were delayed for several months because the Busbys filed for bankruptcy protection. Michael Schak of Fastback Home Solutions, LLC eventually saw a notice of Bank One's foreclosure, but he claims not to have seen Washington Mutual's similar notice on the same property. Schak informed business associate Matt Crowley of Secured Equity.[2] On July 27, 2004, Bank One accepted Secured Equity's offer to purchase the security deed; the price was set at $12,422.35.

Crowley relied in part on Bank One and its attorney Heath Williams who, in turn, relied on a title examination of the property obtained on behalf of Bank One for the conclusion that the Bank One deed was superior to the Washington Mutual deed. Crowley saw a one-page synopsis of the title examination dated August 24, 2004 that listed the Washington Mutual security deed as a subordinate lien. Crowley also relied on Schak, who had researched the title to the property and seen both security deeds. Because the original deed had been paid off, Schak concluded that Bank One's security deed had first priority. He also determined that the house was vacant and that it was worth between $110,000 and $120,000. He communicated this information to Crowley. On October 1, the transaction closed, and Bank One assigned to Secured Equity the note associated with the Bank One deed "without recourse," "without warranty," and with the obligation for any and all due diligence placed solely upon Secured Equity.

On November 2, 2004, unbeknownst to each other, both Washington Mutual and Secured Equity held a foreclosure sale on the same courthouse steps, and each purchased their respective deeds for the value of their outstanding loan.[3] The Secured Equity deed under

---

[2] Secured Equity had made an earlier offer to purchase the Bank One deed in March that was not accepted, and that offer included an acknowledgment that "We understand this mortgage is a 2nd mortgage." But Crowley now explains that this was merely boilerplate language in a form letter that it used for every mortgage. For the purposes of summary judgment, we accept this explanation.

[3] Although Williams commenced foreclosure proceedings on behalf of Bank One, Secured Equity eventually retained Williams to handle the foreclosure on its behalf.

power was issued subject to "any Security Deeds, liens, and encumbrances existing when the above-described Security Deed was filed for record." Secured Equity filed its deed under power on November 22, 2004; Washington Mutual filed its deed under power on December 7, 2004. On December 27, Secured Equity then transferred the Bank One Deed to Fastback, which intends to sell the property and split the profits with Secured Equity.

Washington Mutual filed suit seeking any one of five alternative remedies: (1) a declaratory judgment stating that it held the senior security interest in the amount of $102,663.44; that Secured Equity's security interest was extinguished by Washington Mutual's foreclosure; and that the real estate records be reformed accordingly; (2) a declaratory judgment that Secured Equity's foreclosure and the subsequent sale to Fastback be set aside; and that Secured Equity's interest was extinguished by Washington Mutual's foreclosure sale; (3) a declaration that the parties be restored to their status quo before the foreclosure sales with Washington Mutual holding the senior interest; (4) a judgment for wrongful foreclosure; or (5) a judgment for unjust enrichment. Washington Mutual also sought a temporary restraining order to prevent Fastback from further transfer or sale of the property, but the trial court denied the motion. On cross-motions for summary judgment, the trial court granted Washington Mutual's motion and denied Secured Equity's motion. Although the refinance security deed was executed after the Bank One deed, the trial court held that Washington Mutual's interest should be considered prior under the doctrine of equitable subrogation. But the trial court concluded, "[Washington Mutual] holds the senior security interest under the doctrine of equitable subrogation, which interest has extinguished the interest of [Secured Equity and Fastback]."

Equitable subrogation means that "in certain circumstances, a lender who pays off the lien of a senior creditor may step into the shoes of the senior creditor as to the priority of the senior creditor's lien." *Greer v. Provident Bank*, 282 Ga. App. 566, 568 (639 SE2d 377) (2006). The Supreme Court set out the complete rule in *Davis v. Johnson*:

> Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property, the holder of the security, if not chargeable with

culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby. . . .

(Citations and punctuation omitted.) 241 Ga. 436, 438 (246 SE2d 297) (1978). See also OCGA § 10-7-56 ("A surety who has paid the debt of his principal shall be subrogated, both at law and in equity, to all the rights of the creditor and . . . shall rank in dignity the same as the creditor whose claim he paid."). The typical remedy is that equity will set aside a cancellation of the original security and revive it "for the benefit of the party who paid it off." *Davis*, 241 Ga. at 438.

Washington Mutual meets the prima facie requirements for equitable subrogation. It paid off an encumbrance pursuant to an agreement that it would stand in the same position as the prior encumbrancer. Also, even though Bank One had properly filed its security deed, which provided constructive notice to all the world,[4] equitable subrogation applies even where the successor in interest has knowledge of the intervening lien:

> [K]nowledge of the existence of an intervening encumbrance will not alone prevent the person advancing the money to pay off the senior encumbrance from claiming the right of subrogation where the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer. . . .

*Davis*, 241 Ga. at 438, and compare n. 1 (actual notice in the absence of an agreement to subrogate may show intent to give priority to the intervening lien). But as seen above, equitable subrogation may be denied (a) if the party claiming equitable subrogation is guilty of culpable or inexcusable neglect, (b) if the superior or equal equity of others would be prejudiced, or (c) if the exercise of the right of subrogation will in a substantial way prejudice the intervening lienholder's rights. *Greer*, 282 Ga. App. at 569. Secured Equity contends there are issues of fact on each of these points.

a. In this context, "inexcusable neglect" can be seen as the plaintiff's failure to "avail itself of the proper legal remedy when it had the chance." See, e.g., *Bankers Trust Co. v. Hardy*, 281 Ga. 561 (640 SE2d 18) (2007) (party seeking subrogation failed to include mortgagee's son in loan transaction, even though son had an interest in property), citing *Bank of Danielsville v. Seagraves*, 167 Ga. App.

---

[4] *Thomas v. Hudson*, 190 Ga. 622 (10 SE2d 396) (1940) (recording errors by the clerk have no effect on the rights of those who have properly filed).

135, 142 (305 SE2d 790) (1983). Secured Equity cites evidence suggesting that Washington Mutual discovered the Bank One lien two weeks prior to the foreclosures yet failed to contact Secured Equity at that time to try to resolve the matter. But Secured Equity has not shown that the document, an exhibit to a deposition, was authenticated, and the deponent denied any knowledge about it. Therefore "it was merely inadmissible hearsay that could not be considered as evidence in support of the motion for summary judgment." *Valentin v. Six Flags Over Ga., L.P.*, 286 Ga. App. 508, 511 (649 SE2d 809) (2007). And "[i]t is well settled that this Court will not cull the record . . . on an appellant's behalf." *Carlisle v. Abend,* 288 Ga. App. 150, 151 (1) (653 SE2d 388) (2007). Secured Equity also argues that Washington Mutual should have conducted a post-closing title exam, which could have revealed the existence of the subsequent lien. However, Secured Equity has not cited any law to support such an obligation as a prerequisite to equitable subrogation, and we find none.

b. Secured Equity contends that application of the doctrine of equitable subrogation would prejudice its "superior or equal equity" in the property. In *Davis*, the Court noted that the refinancing lienholder "is estopped from being reinstated to its senior status where the intervening lienholder has taken or purchased the lien in reliance upon his apparent status." 241 Ga. at 439. It is undisputed that the county records showed the Bank One security deed as having been recorded prior to the refinance security deed under which Washington Mutual claims an interest. Thus this enumeration depends on whether Secured Equity took title with constructive knowledge of Washington Mutual's position as being subrogated to the original security deed.

Constructive notice of a claim of equitable subrogation is possible. In *Greer*, Provident Bank loaned a consumer over $400,000 to pay off two prior mortgages on a piece of property. *Greer*, 282 Ga. App. at 567. Unbeknownst to Provident, the consumer had executed a deed on the same property six weeks earlier to secure a $35,950 note to Alfa Management. Id. As a result of delay in the county clerk's office, the Alfa lien was not recorded in the public records until after the Provident transaction, and thus, Provident had only constructive knowledge of the Alfa lien at the time. Id. Upon default, Alfa foreclosed on the property, and Provident sought equitable subrogation against the purchasing party. The Court rejected the argument that the purchaser was a "bona fide purchaser" because at the time of Alfa's foreclosure sale, the two original security liens were still on the record — they had never been cancelled — and the foreclosure sale was made subject to " 'any other open indebtedness on any prior (liens) of record.' " Id. at 569. And the purchaser "was

aware that another lender may have satisfied the [prior] liens, and also knew it was unusual for a lender not to have satisfied the third position Alfa lien." Id. at 570. This Court held that under the circumstances, there was an issue of fact as to whether the purchaser was on constructive notice of Provident's claim of equitable subrogation. Id. at 568-569.

By contrast, in the present case the original security deed had been cancelled of record long before Secured Equity purchased Bank One's interest. Accordingly, *Greer* is distinguishable on this point. Here, the Bank One deed appeared to be in first priority at the time of Secured Equity's purchase.[5] Washington Mutual argues that the language of Bank One's deed put Secured Equity on notice of the possibility of an equitable subrogation claim. The Bank One deed states that it "may be secondary and inferior to the lien securing payment of an existing obligation [with] a current principal balance of approximately $101,000." But the statement is true with regard to the original security deed, which the record showed as having been cancelled. Although Willams admitted that the language "suggests that this deed might be a second mortgage," he did not admit that the language suggests that a later-in-time security deed was subrogated to the original security deed. And even though the appellants admit that it is not typical to have a $17,000 first security deed followed by a second security deed for $107,000, that does not establish as a matter of law that Secured Equity was on notice of a claim of equitable subrogation. See *Leeds Bldg. Products v. Sears Mtg. Corp.*, 267 Ga. 300, 301 (1) (477 SE2d 565) (1996) ("The substance of the notice required must be sufficient to 'place a [person] of ordinary prudence fully upon his guard and induce serious inquiry.' [Cit.]").

We hold that Washington Mutual has failed to establish as a matter of undisputed fact that Secured Equity was on notice of a possible equitable subrogation claim. The trial court erred by granting summary judgment for this reason.

c. Finally, Secured Equity argues that the trial court erred because the exercise of the right of subrogation will prejudice its rights in a substantial way. We agree that the manner in which the doctrine was exercised in this case substantially prejudiced Secured Equity's rights. "Subrogation is of equitable origin and benevolence. It is founded upon the dictates of refined justice. Its basis is the doing of complete, essential, and perfect justice *between all the parties*,

---

[5] Comments in The Restatement of Property state that where an investor purchases an intervening lien "it may not be apparent to the purchaser of the intervening interest that the priority of the old first mortgage will be preserved by subrogation." Restatement (Third) of Property, § 7.6, comment f.

without regard to form, and its object is the prevention of injustice." (Citations and punctuation omitted; emphasis supplied.) *Davis*, 241 Ga. at 439. In this case, the trial court simply enforced Washington Mutual's foreclosure sale, which thereby extinguished any interest held by Secured Equity. Other solutions are available that preserve the subrogee's *and* the purchaser's interests.[6] Indeed, Washington Mutual is only entitled to subrogation up to the amount of the original indebtedness that it paid, and Secured Equity would be entitled to any surplus obtained in a foreclosure sale. See *East Atlanta Bank v. Limbert*, 191 Ga. 486, 490 (2) (12 SE2d 865) (1941); Restatement (Third) of Property, § 7.6, comment e (an increase in the amount of the first priority lien may be harmful to junior lienholders).

For the above reasons, we reverse and remand for further proceedings consistent with this opinion including, if equitable subrogation is applicable, a remedy that protects the interest of both parties.

*Judgment reversed and case remanded. Smith, P. J., and Mikell, J., concur.*

DECIDED JUNE 23, 2008 —
RECONSIDERATION DENIED JULY 25, 2008 — 

*David E. Allman*, for appellants.
*Smith, Diment & Conerly, Dana G. Diment, Stephanie A. Ziege-lasch*, for appellee.

---

[6] We note that there are alternative methods for foreclosing a second security deed. See 2 Daniel F. Hinkel, Pindar's Ga. Real Estate Law and Procedure § 21-74, p. 698 (6th ed. 2004).