**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 7, 2013**

# In the Court of Appeals of Georgia

A12A2568. CITIFINANCIAL SERVICES, INC. v. VARNER et al.

MILLER, Presiding Judge.

Nancy Ann Varner sued Ronald and Rachel Burris for equitable partition and sale of real property. Citifinancial Services, Inc. ("the Bank") intervened in the action, asserting that it had a lien on the property that was the subject of the dispute. The Bank thereafter filed a motion for summary judgment, claiming that it was entitled to a first priority lien on the property under the doctrine of equitable subrogation. The trial court denied the Bank's motion. We granted the Bank's application for interlocutory appeal to review the trial court's decision. The Bank contends that the trial court erred in denying its motion for summary judgment since the uncontested facts established that it was entitled to be subrogated to the rights of the first lien

holder.[1] For the reasons that follow, we reverse the denial of summary judgment as to the equitable subrogation claim.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." (Citation and footnote omitted.) *Secured Equity Fin., LLC v. Washington Mut. Bank*, 293 Ga. App. 50 (666 SE2d 554) (2008).

So viewed, the record shows that on December 21, 2004, Varner conveyed the subject property to her son, Mr. Burris, via a warranty deed recorded on December 22, 2004. Thereafter, on March 5, 2005, Mr. Burris conveyed the property via warranty deed to himself and his wife, Mrs. Burris, as joint tenants with rights of

---

[1] We note that the Bank further contends that the trial court erred in failing to recognize that the Burrises' failure to respond to its requests for admissions rendered all material facts admitted under OCGA § 9-11-36 (a) (2). However, we are unable to review the Bank's claim in this regard. Our appellate record merely contains the filed certificates of service showing that the Bank served request for admissions upon the Burrises and an affidavit averring that the Burrises failed to respond to the requests. Significantly, however, the record fails to contain the actual pleadings setting forth the separate requests to the Burrises. Consequently, we have no means of confirming the specific facts covered by those requests. The burden is on the party alleging error to show it by the record, and since the Bank has failed to submit a complete record of the pleadings at issue, our appellate review of this issue has been precluded. See *Hooks v. Humphries*, 303 Ga. App. 264, 268-269, n. 7 (3) (692 SE2d 845) (2010).

survivorship. On October 12, 2005, Mr. Burris allegedly executed a quitclaim deed conveying his property interest back to Varner. The deeds conveying the property jointly to the Burrises and subsequently to Varner were not recorded at the time of their alleged executions.

On October 3, 2008, Mr. Burris obtained a loan in the amount of $15,823.34 from the Bank. In connection with the loan transaction, Mr. Burris executed a promissory note and a security deed pledging the property as collateral.

Following the loan transaction between the Bank and Mr. Burris, Varner's quitclaim deed and the Burrises' warranty deed were recorded. The quitclaim deed conveying the property to Varner was recorded on August 10, 2009. The warranty deed conveying the property to the Burrises as joint tenants was recorded thereafter on September 24, 2009.

Immediately after Varner recorded her quitclaim deed, she filed a dispossessory action against the Burrises, claiming that she was the owner of the property and that the Burrises were tenants holding over beyond the lease term. As a part of their

defenses, the Burrises challenged the validity of Varner's quitclaim deed and filed a counterclaim seeking to have the quitclaim deed declared as fraudulent and void.[2]

Thereafter, Mr. Burris and Mrs. Burris refinanced the original loan with the Bank. On October 23, 2009, the Burrises executed a promissory note in the amount of $32,471.72 in favor of the Bank. A portion of the loan proceeds from the refinance transaction was used to pay off the original loan to the Bank. In connection with the refinance transaction, the Burrises executed another security deed pledging the property as collateral, which was recorded on October 28, 2009.

Varner subsequently filed a complaint for equitable partition and sale of the property, asserting that the property was owned by Varner and Mrs. Burris as tenants in common. The Bank filed a motion to intervene in order to protect its security interest in the property. The trial court granted the Bank's motion to intervene.

The Bank served discovery requests, including requests for admissions, separately to Varner and the Burrises. In Varner's responses to the Bank's requests for admissions, she denied having any knowledge of the Bank's loan and refinance transactions that encumbered the property and further denied that the Bank had a

---

[2] The record does not reflect that the trial court addressed the Burrises' claims, and thus, the validity of the quitclaim deed remains unresolved.

valid first priority lien on the entire property. The Burrises, however, did not file responses to the Bank's requests for admissions.

The Bank filed a motion for summary judgment, arguing that the evidence, including the facts deemed admitted by the Burrises' failure to respond to the requests for admissions, established its entitlement to equitable subrogation to the first priority lien holder position. The trial court denied the Bank's summary judgment motion, but certified the ruling for immediate appellate review under OCGA § 5-6-34 (b). The Bank filed an application for interlocutory review, which this Court granted. This appeal ensued.

The Bank contends that the trial court's decision was erroneous since the relevant undisputed evidence established its claim for equitable subrogation. We agree.

The doctrine of equitable subrogation has been consistently described as follows:

> Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property,

5

the holder of the security, if not chargeable with culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby; knowledge of the existence of an intervening encumbrance will not alone prevent the person advancing the money to pay off the senior encumbrance from claiming the right of subrogation where the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer.

(Citations and punctuation omitted.) *Byers v. McGuire Properties*, 285 Ga. 530, 536-537 (4) (679 SE2d 1) (2009). Essentially, the doctrine means that

in certain circumstances, a lender who pays off the lien of a senior creditor may step into the shoes of the senior creditor as to the priority of the senior creditor's lien. . . . The typical remedy is that equity will set aside a cancellation of the original security and revive it for the benefit of the party who paid it off.

(Citation and punctuation omitted.) *Secured Equity Fin.*, supra, 293 Ga. App. at 52. "[E]quitable subrogation applies even where a senior encumbrance is satisfied out of purchase money. . . . Moreover, the equities are substantially similar in refinancing and sales transactions[.]" (Citations and punctuation omitted.) Id. at 537 (4). The doctrine "is of equitable origin, being founded upon the dictates of refined justice, and its basis is the doing of complete, essential, and perfect justice between the

6

parties, and its object is the prevention of injustice." (Punctuation and footnote omitted.) *Bankers Trust Co. v. Hardy*, 281 Ga. 561, 562 (640 SE2d 18) (2007). Accordingly, "[t]he courts incline rather to extend than restrict the principle. The doctrine has been steadily growing and expanding in importance, and becoming general in its application to various subjects and classes of persons, the principle being modified to meet the circumstances of cases as they have arisen." (Citations and punctuation omitted.) *Byers*, supra, 285 Ga. at 538 (4).

Here, the uncontroverted evidence established that the Bank advanced loan proceeds to the Burrises in the loan transactions. Significantly, the Burrises do not contest the Bank's claim for equitable subrogation and did not respond to the Bank's statement of facts supporting the motion for summary judgment. No evidence has been presented to controvert the Bank's claims that

- when the Burrises submitted the loan applications, they swore and affirmed that they owned the property;
- the Burrises executed the refinance security deed;
- it was the intent of the Burrises to use the refinance loan proceeds to pay off the original loan;
- the refinance loan proceeds were used to pay off the original loan; and

7

- the Bank did not have actual notice of Varner's 2005 quitclaim deed.

The foregoing uncontested facts reflected that the Bank advanced the refinance loan proceeds to pay off the original loan encumbrance on the property with an implied understanding that the Bank would remain the senior lienholder. See *Byers*, supra, 285 Ga. at 538 (4).

Although the Burrises have not challenged the Bank's claim for equitable subrogation, Varner has challenged the Bank's claim. Varner asserts that equitable subrogation should not be applied since the Bank engaged in inexecusable neglect by failing to perform a title examination, which would have revealed the existence of her quitclaim deed and interest in the property. The record evidence shows that although Varner's quitclaim deed had not been recorded in the county's index at the time of the original loan in October 2008, it had been recorded by the time of the Bank's subsequent refinance transaction in October 2009. Contrary to Varner's argument, however, the Bank's constructive knowledge of the quitclaim deed is not fatal to its claim. "Knowledge of the existence of an intervening encumbrance will not alone prevent the person advancing the money to pay off the senior encumbrance from claiming the right of subrogation where the exercise of such right will not in any substantial way prejudice the rights of the intervening encumbrancer." (Citations and

8

punctuation omitted.) *Baxter v. Bayview Loan Servicing*, 301 Ga. App. 577, 587 (1)

(c) (688 SE2d 363) (2009). Even if the Bank erred in overlooking the quitclaim deed

in a title examination, such error would not be egregious enough to defeat a claim for

equitable subrogation.[3] See, e.g., *Byers*, supra, 285 Ga. at 539 (4) (ruling that even if

the intervening lienholder's deed had been indexed by the county and overlooked by

the claimants, "this error would not be egregious enough to defeat the claim for

equitable subrogation.") (citations and punctuation omitted).

The evidence further fails to reflect that Varner would be prejudiced by the grant

of equitable subrogation in favor of the Bank. Varner's purported acquisition of the

property was a part of an intra-familial transaction whereby her son, Mr. Burris,

allegedly executed a quitclaim deed conveying the property to her in consideration

---

[3] We note that the circumstances in this case are distinguishable from those in *Chase Manhattan Mtg. Corp. v. Shelton*, 290 Ga. 544, 549-550 (4) (722 SE2d 743) (2012), and *Bankers Trust*, supra, 281 Ga. at 563-564, where the Court held that equitable subrogation did not apply due to the lenders' inexcusable neglect. In *Chase Manhattan* and *Bankers Trust*, the lenders had prior knowledge of the joint property owners' interests in the property and had opportunities to protect their interests by including the joint property owners in the loan transactions, but they negligently failed to do so. See *Chase Manhattan*, supra, 290 Ga. at 544, 550 (4); *Bankers Trust*, supra, 281 Ga. at 563. In the instant case, however, there is no evidence that the Bank had prior knowledge of Varner's alleged interest in the property. The constructive notice that the Bank is deemed to have had due to the filing of Varner's quitclaim deed prior to the refinance loan transaction was not sufficient to defeat the Bank's equitable subrogation claim. See *Byers*, supra, 285 Ga. at 539 (4).

9

of "LOVE AND AFFECTION."[4] In response to the Bank's request for admissions, Varner admitted that she was attempting to maintain the property for the benefit of the Burrises.[5] The Burrises obtained the benefits of the loan proceeds and encumbered the property with the liens in favor of the Bank. In addition, at the time Varner recorded the quitclaim deed, the Bank's original senior security deed was still of record. Under these circumstances, the gratuitous intra-familial conveyance to Varner

---

[4] The Bank's summary judgment motion argued that Varner was not a bona fide purchaser for value since she acquired her interest in the property under a gratuitous transfer and she did not pay any monetary amount for her acquisition. In response, Varner submitted an affidavit in which she claimed that Mr. Burris executed the quitclaim deed in exchange for her agreement to pay for legal services when Mr. Burris was having marital difficulties with his wife. The quitclaim deed attached to Varner's affidavit, however, stated that the transfer was "in consideration of the sum of LOVE AND AFFECTION" only and no monetary sum was provided. Varner's self-contradictory testimony on this issue must be construed against her and did not preclude the entry of summary judgment. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28-30 (1) (343 SE2d 680) (1986).

[5] The record shows that the Bank served separate requests for admissions to Varner. Varner, unlike the Burrises, responded to the Bank's requests. Nevertheless, the facts relevant to the Bank's claim in this case center around the conduct of the Burrises and the Bank, who engaged in the loan transactions. Varner denied any awareness of the loan transactions, and she failed to provide any evidence contradicting the Bank's claims regarding the loan transactions. Nothing prevents the consideration of the Burrises' uncontested facts as to their own conduct in this lawsuit simply because such happens to work to Varner's detriment. See, e.g., *Khd Deutz of Am. Corp. v. Utica Mut. Ins. Co.*, 220 Ga. App. 194, 198 (3) (469 SE2d 336) (1996).

does not allow her and the Burrises to avoid the Bank's first priority lien interest in the amount of the original indebtedness. See, e.g., *Davis v. Johnson*, 241 Ga. 436, (246 SE2d 297) (1978) (allowing a bank to be subrogated to its own rights, and noting that the intervening judgment creditor would not be prejudiced by the bank's restoration to its priority rights since the bank's senior security deed was still of record when the intervening judgment was recorded).

Since the evidence conclusively established that the Bank was entitled to prevail on its claim for equitable subrogation, the trial court's decision must be reversed.

*Judgment reversed. Ray and Branch, JJ., concur*.