**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0108. GMAC MORTGAGE, LLC v. PHARIS.

MCFADDEN, Judge.

At issue in this appeal is whether a security deed has been extinguished through foreclosure. We conclude that it has not.

GMAC Mortgage, LLC appeals the grant of summary judgment to Monroe Pharis in GMAC's action for equitable subrogation and unjust enrichment. Construed in favor of GMAC, as the party opposing summary judgment, the evidence shows that GMAC made a loan to Rhonda Hall secured by her home. Hall is Pharis's daughter and his codefendant below. A portion of the proceeds of the GMAC loan were used to discharge a security deed in favor of JP Morgan Chase. While the GMAC loan process was ongoing, Hall's then husband, exercising a power of attorney from Hall, opened a line of credit with the First National Bank of Decatur County, which was

also secured by the subject property. First National foreclosed, Pharis purchased the property at the foreclosure sale, and GMAC brought this action. GMAC seeks a declaration, under a theory of equitable subrogation, that its security deed is intact and superior to Pharis's interest in the property and alternatively repayment under a theory of unjust enrichment.

We agree with GMAC that the trial court erred by granting summary judgment to Pharis on the equitable subrogation claim, because, contrary to Pharis's argument, equitable subrogation is an available remedy even when a lender has constructive knowledge of an intervening lien. We likewise agree with GMAC that the trial court erred by granting summary judgment to Pharis on the unjust enrichment claim, because there is at least some evidence that Pharis knew that GMAC and its borrower intended the GMAC security deed to be in first priority position when Pharis obtained his interest in the property. Accordingly, we reverse the grant of summary judgment to Pharis.

A trial court may grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). "We review a grant or denial of summary judgment de novo

and construe the evidence in the light most favorable to the nonmovant." *Citifinancial Svcs. v. Varner*, 320 Ga. App. 170 (739 SE2d 477) (2013) (citation omitted).

Viewed in the light most favorable to GMAC as the nonmovant, the record shows that Hall, Pharis's daughter, owned a house in Bainbridge, Georgia encumbered by a security deed in favor of JP Morgan Chase Bank. The security deed was recorded April 30, 2007. In May 2008, Hall began the process to apply for a $100,000 loan from GMAC. The loan was closed on June 9, 2008, when Hall signed a promissory note and security deed in favor of GMAC. A portion of the loan proceeds was used to pay the $61,766.14 balance of the JP Morgan Chase first mortgage, as GMAC and Hall had intended. . GMAC's security deed was recorded June 20, 2008, and a cancellation of JP Morgan Chase's security deed was recorded on July 7, 2008.

Meanwhile, Hall granted her husband (whom she later divorced) a limited power of attorney for the purpose of obtaining a business line of credit. The limited power of attorney expressly stated that the line of credit was secured "by second lien security deed" on the property. The husband obtained a $50,000 line of credit from First National Bank of Decatur County, which was secured by the property. Both the limited power of attorney and First National Bank's deed to secure debt were

3

recorded May 27, 2008, three weeks before the GMAC loan closed. Eventually, First National Bank foreclosed its security deed, and Pharis purchased the property at foreclosure sale in December 2010.

GMAC filed this action, seeking a declaration that its interest in the property was unaffected by the foreclosure sale; that its interest has first priority position under the doctrine of equitable subrogation; and that its interest is superior to Pharis's interest.[1] Alternatively, GMAC sought repayment of the funds it advanced under a theory of unjust enrichment. The trial court granted Pharis's motion for summary judgment, and GMAC filed this appeal.[2]

1. *Equitable subrogation.*

---

[1] GMAC also named Hall as a defendant, but she filed a petition for bankruptcy. GMAC dismissed all claims against Hall without prejudice after the trial court granted Pharis summary judgment.

[2] GMAC filed its notice of appeal to the Supreme Court on the basis of its jurisdiction over "[c]ases involving title to land," Ga. Const. 1983, Art. VI, Sec. VI, Par. III (1), and "[a]ll equity cases." Id., Par. III (2). That court transferred the case to us, finding that "equitable subrogation claims do not invoke [that] court's equity jurisdiction since the grant of equitable relief is wholly dependent on the resolution of the underlying legal issues," and "unjust enrichment claims do not involve substantive issues of equity since resolution of the claim involves only the determination of the underlying legal issues." (citations omitted.)

4

Under the doctrine of equitable subrogation, "where it was the intent of the parties to substitute a new creditor's rights for the rights of the creditor that is being paid off, the new creditor steps into the shoes of the old creditor in terms of priority." *Kim v. First Intercontinental Bank*, __ Ga. App. __, __ (1) (__ SE2d __) (Case No. A13A1628, decided March 21, 2014) (citation and punctuation omitted). In *Davis v. Johnson*, 241 Ga. 436 (246 SE2d 297) (1978), our Supreme Court set out the complete rule:

> Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property, the holder of the security, if not chargeable with culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby.

Id. at 438. "The principle of subrogation is applied for the purpose of doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice. The courts incline rather to extend than restrict the principle." *Greer v. Provident Bank*, 282 Ga. App. 566, 568 (639 SE2d

377) (2006) (citation and punctuation omitted). The fact that a party took title by foreclosure sale does not preclude the availability of subrogation, even though generally the purchaser at a foreclosure sale takes title divested of all incumbrances made since the creation of the power of sale in the deed to secure debt. Id. at 568-569. See also *Massey Assocs. v. Whitehorse Inns of Georgia*, 265 Ga. 320, 321 (454 SE2d 513) (1995) ("[T]he purchaser at a sale under a power of sale in a deed to secure debt takes the grantee's title divested of all incumbrances made since the creation of the power.") (citation and punctuation omitted).

GMAC argues that the trial court erred in granting Pharis summary judgment because the undisputed evidence shows that it advanced funds to Hall to pay off a prior senior lien holder with the intent that GMAC would occupy a first priority security position, that it did not engage in culpable or inexcusable neglect, and that Pharis would not be prejudiced. Pharis counters that, as a matter of law, GMAC is not entitled to equitable subrogation because it had constructive notice of First National Bank's security deed, which was recorded before GMAC's security deed, and because GMAC was a mere volunteer when it paid off the JP Morgan Chase security deed. He adds that, in any event, the undisputed evidence shows that GMAC was negligent and that GMAC's argument regarding prejudice lacks merit.

6

(a) *Pharis is not entitled to summary judgment as a matter of law.*

In arguing that, as a matter of law, equitable subrogation is not available to GMAC because it had constructive notice of First National Bank's intervening lien, Pharis relies on a 1931 case which has since been disapproved, *Federal Land Bank of Columbia v. Barron*, 173 Ga. 242 (160 SE 228) (1931). In that case our Supreme Court did reject a claim of equitable subrogation on the ground that the party seeking subrogation had constructive notice of an intervening lien and had no agreement with the holder of the intervening lien to be subrogated to first position. Id. at 245-248. But those holdings of *Barron* were disapproved seven years later. In *McCollum v. Lark*, 187 Ga. 292 (200 SE 276) (1938), our Supreme Court held:

> [W]here a lender, pursuant to a contract with the debtor, in which the debtor agrees and does attempt to convey to the lender a first lien upon realty, and agrees that the lender shall be subrogated to the rights and remedies of any creditor whose lien he discharges, does discharge and has marked canceled of record a lien superior to his conveyance from the debtor, without actual but only constructive notice of another lien of record, the lender is subrogated to the creditor whose lien he discharges, and may revive the lien and enforce the same against the property when to do so would not prejudice the rights of the intervening lienor who has done nothing to change his position in reliance upon the cancellation of the lien paid.

7

Id. at 303-304. The court held that "an agreement for subrogation, made with *either* the debtor or the creditor, is sufficient to overcome constructive notice of the intervening lien," and disapproved "any ruling or intimation to the contrary" in *Barron*. Id. at 303 (emphasis supplied).

The other cases on which Pharis relies, *Bankers Trust Co. v. Hardy*, 281 Ga. 561, 564 & n. 9 (640 SE2d 18) (2007), *Federated Mut. Ins. Co. v. Northland Ins. Co.*, 254 Ga. 402 (329 SE2d 493) (1985), *Callan Court Co. v. Citizens & Southern Natl. Bank*, 184 Ga. 87, 134 (5) (190 SE 831) (1937), and *Transport Ins. Co. v. Maryland Cas. Co.*, 187 Ga. App. 361, 364 (3) (370 SE2d 188) (1988), all cite *Barron* for the principle that a mere volunteer is not entitled to subrogation. This principle does not apply here, though, because there is evidence that when Hall borrowed the money from GMAC, she agreed that GMAC would be subrogated to JP Morgan Chase's first priority position. See *Bankers Trust Co.*, supra, 281 Ga. at 564 ("The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another, *without any assignment or agreement for subrogation*, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own.") (citations omitted and emphasis applied). In short all of the cases cited by Pharis have been disapproved or are

8

inapplicable, and he has not shown that he was entitled to summary judgment as a matter of law.

(b) *Certain material facts are in dispute.*

GMAC argues the trial court erred by granting summary judgment because at best, the material issues of whether it is chargeable with culpable or inexcusable neglect and whether Pharis's equity would be prejudiced by granting GMAC equitable subrogation are in dispute. We agree.

The sole fact on which Pharis relies in claiming that it is undisputed that GMAC engaged in inexcusable neglect is that GMAC did not conduct a title search in the period between the recording of the First National Bank security deed and the closing of the GMAC loan. This fact alone does not demonstrate inexcusable neglect, however. "Even if [GMAC] erred in overlooking the [security] deed in a title examination, such error would not be egregious enough to defeat a claim for equitable subrogation." *Citifinancial Svcs. v. Varner*, supra, 320 Ga. App. at 174 (holding bank's failure to conduct title examination did not amount to inexcusable neglect that would defeat claims for equitable subrogation). See also *McCollum*, supra, 187 Ga. at 303-304 (holding a lender may be entitled to subrogation even if it had constructive

9

notice of intervening lien). Per force Pharis has not shown that the issue of inexcusable neglect is undisputed.

Nor is the material issue of whether Pharis would be prejudiced by allowing equitable subrogation undisputed. Indeed, Pharis points to no evidence of prejudice. In *Citifinancial Svcs. v. Varner*, supra, 320 Ga. App. at 174, we concluded that the evidence did not show that the defendant would be prejudiced by the grant of equitable subrogation in favor of the lender because the defendant's acquisition of the property was a part of an intra-familial transaction; she admitted that she was attempting to maintain the property for the benefit of her son and his wife; the son and his wife obtained the benefits of the loan proceeds and encumbered the property with the liens in favor of the lender; and the original senior security deed was still of record at the time the defendant acquired the property. Whether the evidence in the instant case likewise shows lack of prejudice is not undisputed.

Construing the evidence in the light most favorable to GMAC, we conclude that it has raised disputed questions of material fact concerning whether it engaged in inexcusable neglect and whether Pharis would be prejudiced if equitable subrogation were granted.

2. *Unjust enrichment.*

10

The doctrine of unjust enrichment applies "when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefitted party equitably ought to return or compensate for." *Tuvim v. United Jewish Communities*, 285 Ga. 632, 635 (2) (680 SE2d 827) (2009) (citation and punctuation omitted). Relying on *Reidling v. Holcomb*, 225 Ga. App. 229 (483 SE2d 624) (1997), Pharis argues that, as a matter of law, GMAC cannot pursue its claim for unjust enrichment because its failure to conduct a title search was negligent. But see OCGA § 23-2-32 (b) ("Relief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby.") *Reidling* is distinguishable on its facts. In *Reidling*, we rejected the unjust enrichment claim of a purchaser of a lot who started construction of a house on the wrong parcel of land. We explained that

> [t]he concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received; otherwise the party has been unjustly enriched at the expense of another and, in fairness and good conscience, must reimburse the other to the extent of the value conferred. Inherent in unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon them by another and failed to stop the act or to reject the benefit.

11

*Reidling*, supra, 225 Ga. App. at 232 (2). Because there was no evidence that the defendant in *Reidling* knew of the purchaser's mistake or was standing by while the house was being built, thereby intentionally failing to act so that a greater benefit would flow to him from the purchaser's negligence in building on the wrong lot, we held that the defendant was entitled to summary judgment on the claim. Id. Here, however, Pharis had a least constructive knowledge that GMAC had a security deed that was intended to be first in position: the security deed itself was of record at the time of the foreclosure sale and the limited power of attorney under which Hall's former husband obtained the First National Bank line of credit was of record at the time of the sale, and expressly stated that the line of credit was secured "by second lien security deed" on the property. Pharis's purchase of the property arose from the foreclosure of this lien. Because *Reidling* is distinguishable, the trial court erred in granting summary judgment on this basis.

*Judgment reversed. Andrews, P. J., and Ray, J., concur.*