**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 8, 2022**

# In the Court of Appeals of Georgia

A22A0035. U. S. BANK, NATIONAL ASSOCIATION AS
    TRUSTEE OF THE CABANA SERIES IV TRUST v.
    CARRINGTON MORTGAGE SERVICES, LLC.

MARKLE, Judge.

This appeal involves the priority of property liens held by U. S. Bank National

Association as Trustee of the Cabana Series IV Trust (U. S. Bank) and Carrington

Mortgage Services, LLC. (Carrington). Carrington filed suit to establish its loan as

holding the first lien position. After both parties moved for summary judgment, the

trial court found that the parties intended Carrington's loan to have first priority.

Accordingly, the trial court granted summary judgment to Carrington and ordered

reformation of the deeds and specific performance to place Carrington's interest in

first priority.[1] U. S. Bank now appeals, arguing that the trial court erred in awarding

---

[1] The trial court also denied U. S. Bank's cross-motion for summary judgment.

such remedy, and by improperly considering evidence from a non-party loan servicer. For the reasons that follow, we vacate the trial court's order and remand the case for further proceedings.

> Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party.

(Citation omitted.) *LeCroy v. Bragg*, 319 Ga. App. 884, 885 (1) (739 SE2d 1) (2013).

The facts here are largely undisputed. In 2007, Wanda Norman obtained a loan in the amount of $119,130 (the Purchase loan) to purchase property in DeKalb County. The loan was secured by a security deed naming Mortgage Electronic Registration Systems, Inc. (MERS) as the nominee for Opteum. Two years later, Norman conveyed an interest in the property to her husband via a quitclaim deed. That same year, the Normans borrowed $24,500, which was secured on the same property by a second security deed, naming MERS as the nominee for Taylor, Bean & Whitaker Mortgage Corp. (TBW) ("the second loan"). This second security deed expressly identified the second loan as a "Secondary lien" and was noted in the

records to be a "silent second."[2] Around the same time, the Normans refinanced the Purchase loan, again using the same property to secure the loan under a security deed, naming MERS as the nominee for TBW ("the Refi loan").

The HUD-1 settlement papers indicated that the Refi loan was to be subject to a second lien, and there was a line item charge for recording a subordination agreement. The closing instructions for both loans required the closing agent to obtain a subordination agreement from TBW to make the Refi loan first priority, and to record the agreement simultaneously with the Refi loan. Despite these instructions, however, the closing agent failed to obtain or record a subordination agreement signed by TBW.[3] Instead, she included in the closing documents a note entitled "first position letter," confirming that the Refi loan had paid off the Purchase loan; therefore, the Refi loan held the first priority lien. The second loan was recorded in March 2009, but the Refi loan was not recorded until six months later.

---

[2] A "silent second" is a second lien loan transaction in which the secondary lender agrees to give up certain of its rights and become the second priority lien. See Jo Ann J. Brighton, "Silent Second Lien Financings: Popular Lending Structure May Give Rise to Enforcement Problems," 24-FEB Am. Bankr. Inst. J. 22 (2005); see also *Mitchell v. West End Park Co.*, 171 Ga. 878 (156 SE 888) (1930) (senior lien holder may waive his right to first priority lien).

[3] The Normans signed a subordination agreement, but TBW did not sign it.

The Refi loan was ultimately assigned to Carrington. The second loan was transferred to Selene Finance for servicing. In 2015, Norman discovered that the Refi loan incorrectly occupied the second priority lien position. She contacted Selene Finance, which acknowledged that it held the secondary lien position and that, through a recording error, it had bumped Carrington from the first priority lien position. However, when Carrington requested Selene Finance sign a subordination agreement, it declined. The second loan was ultimately assigned to U. S. Bank.

Carrington filed suit against U. S. Bank, seeking a declaratory judgment that it was entitled to a first priority interest. It also requested equitable relief; equitable subrogation; reformation of the deeds due to mutual mistake; and specific performance. In its answer and response to requests to admit, U. S. Bank admitted that Selene had conceded the second loan held the second priority lien position.

Both parties moved for summary judgment, and following a hearing, the trial court granted summary judgment to Carrington. The trial court found that Carrington was entitled to reformation of the deeds because there had been a mutual mistake when the closing agent failed to obtain a signed subordination agreement and recorded the deeds in the wrong order. The trial court further found that Carrington was entitled to specific performance because U. S. Bank's own records showed that the

4

Refi loan was intended to hold the first priority position. The trial court did not address the claims for declaratory judgment or equitable subrogation. In its order, the trial court instructed that the county property records be reformed to reflect the liens' correct priority status. U. S. Bank now appeals.

1. U. S. Bank first argues that Carrington is not entitled to equitable relief, reformation, or specific performance because there was no mutual mistake given that TBW, as Carrington's predecessor, held both the Refi loan and the second loan at the time of closing and is solely responsible for the failure to obtain a signed subordination agreement. It asserts that TBW never paid off the debt secured by the second loan, thereby leaving U. S. Bank in the first priority position. It then argues that it was entitled to summary judgment on Carrington's claims for a declaratory judgment and equitable subrogation. Under the facts of this case, we are constrained to conclude that the trial court erred by granting summary judgment to Carrington on the claims for reformation and specific performance, and ordering that the county deed records be altered.

"A security deed containing a power of sale and a deed to secure debt are matters of contract, the provisions of which are controlling as to the rights of the parties, and will be enforced as written." *Najarian Capital v. Milford*, 357 Ga. App.

5

174, 179 (1) (a) (850 SE2d 236) (2020). Because Carrington and U. S. Bank are both assignees of the deeds from TBW, their rights are controlled by the deeds. *Sparra v. Deutsche Bank Nat. Trust Co.*, 336 Ga. App. 418, 422 (1) (e) (785 SE2d 78) (2016).

Generally, the priority of each deed or lien is determined by the date of its recording. See, e.g., OCGA § 44-2-1. Thus, a deed that was executed second, but filed first can take the first priority over the earlier mortgage. See OCGA §§ 44-2-2 (b); 44-2-6. Nevertheless, parties can agree to modify the order of lien priority. *N. Ga. Sav. & Loan Assn. v. Corbeil*, 177 Ga. App. 523, 524 (1) (339 SE2d 779) (1986).

> [W]here facts apparent on the face of the mortgages show that it was the intention of the parties to give preference to one over the other, the lien so preferred will be enforced . . . . The parties may, as between themselves, make a valid agreement . . . that one of two mortgages shall be prior to the other, and the order of record is then immaterial unless they are subsequently assigned to other persons who have no notice of the agreement.

*Mitchell v. West End Park Co.*, 171 Ga. 878, 891 (1) (156 SE 888) (1930). Moreover, as we have explained,

> [t]he legal order or priority as between mortgages and other liens or claims may be fixed, reversed, or modified by an agreement of the parties or by a waiver or release on the part of the senior lienholder. . . Furthermore, even absent a specific agreement, a lienholder may waive

6

priority by implication; without any agreement there may be facts and circumstances which would indicate an intention to make one of two claims prior to the other.

(Citation and punctuation omitted.) *F & W Agriservices v. UAP/Ga. Ag. Chem.*, 250 Ga. App. 238, 240 (1) (549 SE2d 746) (2001).

In this case, Carrington argues that the original parties to the loans agreed that the Refi loan would have first priority. The record here is replete with evidence of this intent on the face of the loans, as well as in the records of the refinancing and subsequent servicing of the loans. At issue, however, is what relief was appropriate under the specific facts of this case.

Here, Carrington's claims sounded largely in equity. "Equity jurisdiction is established and allowed for the protection and relief of parties where, from any peculiar circumstances, the operation of the general rules of law would be deficient in protecting from anticipated wrong or relieving for injuries done." OCGA § 23-1-3. "Equity considers that done which ought to be done and directs its relief accordingly." OCGA § 23-1-8. With this in mind, we turn to Carrington's claims for relief.

(a) *Reformation*.

Reformation of a contract is authorized when there is a mutual mistake as to the content of a writing: Equity may intervene and reform a conveyance when the instrument fails to express accurately the intention of the parties. A petition for reformation of a written contract will lie where by mistake of the scrivener and by oversight of the parties, the writing does not embody or fully express the real contract of the parties. The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction. And the negligence of the complaining party will not defeat his right to reformation if the other party has not been prejudiced. A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence, that results in a conveyance that is contrary to the intention of the parties in their contract. But for equity to intervene, the mistake must be shown to be the mistake of both parties.

(Citations and punctuation omitted.) *JPMorgan Chase Bank, N. A. v. Cronan*, 355 Ga. App. 556, 561–562 (2) (845 SE2d 298) (2020); see also OCGA §§ 23-2-25; 23-2-30. "Reformation of written instruments may be had by the immediate parties thereto and by those standing in privity with them, such as their successors." (Citation and punctuation omitted.) *Ins. Agency of Glynn County v. Atlanta Cas. Co.*, 255 Ga. App. 323, 324 (1) (565 SE2d 547) (2002); see also *West Lumber Co. v. Moore*, 179 Ga. 302 (2) (175 SE 642) (1934) (equity permits reformation of a deed); OCGA § 23-2-23 ("A mistake of law by the draftsman or other agent, by which the contract, as

8

executed, does not fulfill or violates the manifest intention of the parties to the agreement, may be relieved in equity.").

Here, the evidence shows that the parties intended the Refi loan to hold first priority. However, the trial court erred in concluding that the proper remedy was to order reformation of the deed because nothing in the form of the conveyance was inaccurate. *Potter's Properties v. VNS Corp.*, 306 Ga. App. 621, 623 (703 SE2d 79) (2010) ("A petition for reformation of a written contract will lie where by mistake of the scrivener and by oversight of the parties, *the writing* does not embody or fully express the real contract of the parties.") (emphasis supplied). Both deeds correctly identified the proper parties and the property securing the debt, and they were duly signed. Id.; see also *JPMorgan Chase Bank, N. A. v. DelPiano*, 356 Ga. App. 354, 356-357 (1) (847 SE2d 369) (2020) (deed missing attestation was facially defective and could be reformed); *Cronan*, 355 Ga. App. at 561-562 (2) (reformation of deed appropriate if there was a mutual mistake as to which property secured the debt). Moreover, the secondary loan indicates *on the face of the document* that it was intended to be the second priority. Thus, there is nothing on the form of the

9

conveyances that requires reformation.[4] Compare *West Lumber Co.*, 179 Ga. at 302 (2) (trial court had authority to reform contract and deed to reflect that party agreed to assume existing liens where contract and deed did not show this agreement).

Instead, the mistake in this case arose from the closing agent's failure to follow the closing instructions and record the deeds in the proper order to secure the first priority lien for the Refi loan. Compare *Black v. Nationstar Mtg.*, 344 Ga. App. 217, 221 (809 SE2d 487) (2018) (mutual mistake in deed existed where parties intended to convey two pieces of property but, through a scrivener's error, only one piece of property was listed). Because reformation of the deed is not the proper equitable

---

[4] Carrington cites to *DeGolyer v. Green Tree Servicing,* 291 Ga. App. 444, 447 (1) (662 SE2d 141) (2008), for the proposition that the trial court can reform the security deed to make it first priority. But that case involved reformation of a deed that lacked a legal description when it was recorded. Id. The trial court explained that it could reform the deed to reflect the true intent of the parties as to the property encumbered, and that the reformed deed would relate back to when it was originally executed. Id. As such, the deed would maintain the first priority position, and the plaintiff was entitled to a declaratory judgment to that effect. Id. The case did not hold that a mistake in priority interests allows the trial court to reform the deed so as to correct the recording error and priority lien position. Id.; see also *DelPiano*, 356 Ga. App. at 359 (2) (b) (in a case involving request for equitable relief and a declaratory judgment, explaining that "a trial court may equitably reform a recorded but *defective* security deed and enter a declaration that the security deed has first priority.") (citation and punctuation omitted; emphasis supplied).

10

remedy to correct the order of the lien priority, the trial court erred in awarding such relief.

(b) *Specific performance*.

The trial court also concluded that Carrington was entitled to specific performance. Again, we conclude that the trial court erred in the remedy it ordered.

"Specific performance is an equitable remedy available when the damages recoverable at law would not be an adequate compensation for nonperformance." (Citation and punctuation omitted.) *Simpson v. Pendergast*, 290 Ga. App. 293, 297 (2) (659 SE2d 716) (2008); see also *Sexton v. Sewell*, 351 Ga. App. 273, 279 (1) (830 SE2d 605) (2019) ("it was well established that monetary damages are not an adequate legal remedy where the contract sought to be performed involved the sale of unique real property[.]") (citation and punctuation omitted); OCGA § 23-2-130. We have found no case law – and the parties have not pointed to any – showing that specific performance is an appropriate remedy here. In fact, there are obstacles to the trial court's application of specific performance in this case. Importantly, the trial court did not order *the parties* to specifically perform *any* obligation. It did not order U. S. Bank to sign a subrogation agreement. Rather, it ordered the property records be corrected. As discussed above, however, there was nothing incorrect about the

11

deed, and thus, no basis on which to correct the records. As such, the remedy the trial court ordered was improper. Cf. OCGA § 44-2-12 (providing for circumstances in which a deed may be re-recorded).

(c) *Equitable relief.*

Equity allows for relief when there is no adequate remedy at law. OCGA § 23-1-3; see also *Wallace v. Wallace*, 345 Ga. App. 764, 767-768 (1) (813 SE2d 428) (2018). But as the Supreme Court of Georgia has explained:

> [T]he first maxim of equity is that equity follows the law. Thus, a court of equity has no more right than a court of law to act on its own notion of what is right in a particular case. Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity. Although equity does seek to do complete justice, it must do so within the parameters of the law.

(Citations and punctuation omitted.) *Dolinger v. Driver*, 269 Ga. 141, 143 (4) (498 SE2d 252) (1998); see also *Northlake Manor Condo. Assn. v. Harvest Assets*, 345 Ga. App. 575, 581-582 (2) (812 SE2d 658) (2018) (although court has discretion to fashion remedy under general principles of equity, that discretion is limited by established legal principles). At this stage, Carrington has not shown that it has an inadequate remedy at law that would permit the trial court to direct an equitable

12

remedy to correct the alleged error in the lien priority. See *Sexton*, 351 Ga. App. at 275-276 (1) (equitable relief not warranted where there was an adequate remedy at law); see also *McArthur Elec. v. Cobb County School Dist.*, 281 Ga. 773, 774-775 (642 SE2d 830) (2007); *Colston v. Hutchinson*, 208 Ga. 559, 560-561 (67 SE2d 763) (1951). Accordingly, the trial court erred in the relief it ordered, and we must vacate the trial court's order and remand the case for further proceedings. Notably, in its order granting Carrington's motion for summary judgment, the trial court did not rule on Carrington's claims for declaratory judgment or equitable subrogation; nor did it make any findings regarding any potential defenses U. S. Bank might assert. On

remand, the trial court should consider these claims.[5] *DelPiano*, 356 Ga. App. at 359 (2) (c).

2. Finally, U. S. Bank argues that the trial court abused its discretion by allowing hearsay evidence from non-party Selene Financing. We disagree.

Here, U. S. Bank admitted that the Selene records were authentic, but argued that they were inadmissible hearsay. Pretermitting whether the documents from Selene were inadmissible hearsay, there is no reversible error where the evidence is cumulative. *White Horse Partners v. Monroe County Bd. of Tax Assessors*, 348 Ga. App. 603, 608-609 (2) (824 SE2d 57) (2019) ("it is well established that admission of hearsay is harmless when it is cumulative of legally admissible evidence showing

[5] See *Murray v. Chulak*, 250 Ga. 765, 769 (3) (300 SE2d 493) (1983) (action seeking declaratory judgment as to priority of liens); *Hayes v. EMC Mtg. Corp.*, 296 Ga. App. 709 (675 SE2d 594) (2009) (same); *GMAC Mtg. v. Pharis*, 328 Ga. App. 56, 58 (1) (761 SE2d 480) (2014)("[u]nder the doctrine of equitable subrogation, where it was the intent of the parties to substitute a new creditor's rights for the rights of the creditor that is being paid off, the new creditor steps into the shoes of the old creditor in terms of priority.") (citations and punctuation omitted); see also *Cross v. Wilmington Trust Nat. Assn.*, 360 Ga. App. 747, 752-753 (2) (860 SE2d 212) (2021); *Kim v. First Intercontinental Bank*, 326 Ga. App. 424, 426-427 (1) (a) (756 SE2d 655) (2014) (reforming deed to correct property description and applying equitable subrogation to correct error in priority of deeds); *Secured Equity Financial v. Washington Mut. Bank*, 293 Ga. App. 50 (666 SE2d 554) (2008) (equitable subrogation claim where refinancing deed and second lien were filed in reverse order and parties sought to correct lien priority); 59 CJS Mortgages § 299 (March 2022 Update).

the same fact.") (citation and punctuation omitted). Our review of the record confirms that there was other properly admitted evidence showing the intent for the Refi loan to hold the first priority. As such, any error in the admission of the Selene documents is harmless.

For the reasons discussed above, we conclude that the trial court erred in the relief it granted. We therefore vacate the trial court's order granting summary judgment to Carrington, and remand the case for further proceedings consistent with this opinion.[6]

*Judgment vacated and case remanded. Dillard, P. J., and Mercier, J., concur.*

---

[6] Because the trial court expressly declined to consider the claims of equitable subordination and declaratory relief, we do not address the merits of U. S. Bank's argument that the trial court erred by denying its cross-motion for summary judgment on those counts. See *Sarrio v. Gwinnett County*, 273 Ga. 404, 406 (2) (542 SE2d 485) (2001); *Tiffany and Tomato, Inc. v. Wells and McElwee, P. C.*, 358 Ga. App. 311, 316 (1), n. 6 (855 SE2d 55) (2021) ("issues which have not been ruled on by the trial court may not be raised on appeal. . . .We are a court for the correction of errors and are not authorized to issue an advisory opinion about a potential error a trial court may make in the future.") (citations and punctuation omitted).